## UNITED STATES v. 1,960 ACRES OF LAND IN RIVERSIDE COUNTY, CAL., et al.

### No. 2567–PH.

District Court, S. D. California, Central Division.

Jan. 4, 1944.

Irl D. Brett, Sp. Asst. to Atty. Gen., and M. B. Zimmerman, Sp. Atty., of Los Angeles, Cal., for plaintiff.

Robert W. Kenney, Atty. Gen. of California, by Louis G. Campbell, Deputy Atty. Gen., for defendant State of California.

Earl Redwine, Co. Counsel, of Riverside, Cal., for defendant Riverside County.

HALL, District Judge.

This is a suit for the condemnation of land. The United States of America is designated as Plaintiff.

There can be no doubt that this Court has jurisdiction to condemn lands. Jurisdiction can be invoked by the Government as plaintiff, however, only by those persons authorized, and in the manner or method prescribed by statute. Whether or not the safeguards of those statutes have been complied with, so as to confer the necessary authority on the persons appearing herein as attorneys for the Government, is the immediate question, which in turn provokes the larger question which is one only of jurisdiction—the power of this court to act legally in a suit in which the United States is concerned as a party.

Jurisdiction is, of course, important in all cases, but it is of particular moment in cases of eminent domain, or any action which affects the title of lands. In an ordinary case the bad results of a judgment made without jurisdiction can be corrected by a subsequent judgment—without great loss usually—but a judgment of condemnation of lands without jurisdiction is bound to result almost inevitably in a trail of confusion, litigation, loss and all the other attendant miseries and evils, which bad land titles have produced in and out of courts.

If the Court acts without jurisdiction, then the Court has neither settled the validity of the title which the United States

acquires nor has it eliminated the possibility of future claims against the Government on the ground that the parties who obtained the money for the land were not entitled to it.

There are several hundred such cases pending in this District. No accurate information can be obtained as to the number of parcels involved in these cases, but persons attached to the Department of Justice have variously estimated from 10 to 25,000 different parcels (in one case there were over 1,200) and as many or more defendant owners, very few of whom have been served with process. How many defendants know that the Government is in possession and claiming title to their property is undisclosed and is likely unknown. Such facts, of course, cannot affect the jurisdiction of this court, but they serve to show that jurisdiction, or lack of it, is of the greatest moment and of the most serious consequence to the whole people of this district as well as to the nation.

Until comparatively recently, the U. S. District Attorney appeared on all pleadings and in all cases. There is no question as to those cases insofar as he has acted and is acting to represent the United States. Questions here discussed arose when the U. S. Attorney's name was stricken or omitted from pleadings in cases in which he previously appeared or on new cases filed where neither on the pleadings, nor otherwise in the case, was there an appearance by the District Attorney, nor any Assistant District Attorney, the Attorney General, nor any Assistant Attorney General, nor any person for whom there was on file in the Clerk's Office or presented to the Court, any ·general or special letter, commission, or other written appointment, or authorization from the Attorney General to the parties whose names are signed as Attorneys for the Government, whereby they or any of them are *"specially retained"* to assist in the *"trial"* of any *"case"* or *"specially"* appointed" or *"specifically"* directed" or *"commissioned"* as a *"Special* Assistant to the Attorney General" or to the district attorney, to conduct any kind of *"legal proceeding"* of or concerning either the particular lands involved, or any lands at all, or any other kind of "case" or legal proceeding.

These questions originally arose about or before the 1st of October, 1943. Since then a procedure has apparently been worked out which is the one followed in the instant case and to which the conclusion herein is necessarily limited. This procedure will appear in statement of this case in a subsequent portion of this memorandum.

According to a memorandum,[1] left with me on October 7th and signed "Irl D. Brett" there are in Los Angeles two separate staffs of "Special Assistants" on land matters, one under the direction of Mr. Williams, who is "in charge of *all matters* arising out of the *Trial* Section of the Lands Division;" and the other one under Mr. Brett, who is "in charge of *all matters* arising out of the *Condemnation Section,* Lands Division."

The memorandum further states that by the term, "all matters", is meant, "all proceedings originating from the Lands Division, Department of Justice and filed or to be filed in the District Court of the Southern District of California." This would seem to comprehend that Mr. Brett and Mr. Williams not only would have charge of all matters filed in the future, but were and are to replace the United States Attorney in all suits to which the United States was a party involving lands which have heretofore been filed. Inasmuch as all condemnation suits contemplate a trial, sooner or later, it is not clear just where the authority of either Mr. Brett or Mr. Williams begins and ends. The "direction", referred to in the memorandum of Hon. Norman H. Littell, Assistant Attorney General, made in August, 1943, making these changes is not on file in the court or presented.

The questions involved in this case are not necessarily those which might arise under Section 314 and 306, Title 5 U.S.C.A., in a suit to recover money paid to a person as a "Special Assistant" or "Special Attorney" on the ground he appeared in a case when not "specially authorized by law" or that the service could have been rendered by the District Attorney—or for other reasons arising under those Sections. Suffice it to say that we are not here concerned with the right of any person to receive pay for services to the Government—the questions are much more far reaching.

And, of course, this Court is not concerned with the personnel of the Attorney General's Office or with the policy which, instead of making all such attorneys either

---

[1] See page 883, post.

regular or Special Assistants to the United States Attorney (where their work would still be under the general supervision and direction of the Attorney General), and attaching the clerical force to the United States Attorney's staff, guided the Attorney General in setting up, apart from and independent of the United States Attorney, a separate staff of fifty people or so, some of whom are called "Special Assistants to the Attorney General" and "Special Attorneys, Department of Justice" all receiving their immediate orders and directions from and being under the supervision neither of the Attorney General nor any regular Assistant Attorney General nor the U. S. District Attorney, but another "Special Assistant to the Attorney General" with "plenary" power as to the cases they are assigned to handle and the conduct thereof.

Some question, however, may arise in the consideration of this matter as to the legality of delegating to a Special Assistant the right in turn to delegate to other Special Assistants the power to represent (try and present cases, sign stipulations for judgment, etc.) the United States of America in the securing of lands by condemnation.

Coming now to a statement of the facts and procedure in the instant case: The present complaint was filed November 9, 1942. It is signed "Leo V. Silverstein, U. S. Attorney (who was then the United States District Attorney) Irl D. Brett, Special Assistant to the Attorney General, Sylvan G. Bey, Special Attorney Lands Division, Department of Justice." Thereafter an Order for Immediate Possession was made and various Declarations of Taking were filed which gave the United States Title to the property. Tit. 40 U.S.C.A. § 258. This being the case, there is nothing to adjudicate, except to determine as between the various defendant owners the respective amounts of the money deposited in court to which each defendant is en-

titled. Upon stipulation, many judgments have been made in this case ordering the release of stipulated amounts of money. In all of the prior proceedings and stipulations the United States District Attorney appears as counsel for the Government. On November 22nd and 23d there was presented a stipulation, as to Tract 21 and 22 only, wherein and whereby the defendants, County of Riverside and State of California, agreed that as to said tract the County of Riverside should be paid the sum of $20.00 from the deposit in Court. The stipulation was executed by the County Counsel of the County of Riverside and by the Attorney General of the State of California for the defendants and was executed and presented on behalf of the United States as follows:

"Presented by:
"Irl D. Brett
  "Special Assistant to The Attorney
                                  General
"M. B. Zimmerman
  "Special Attorney Lands Division
                      Department of Justice
"By Irl D. Brett (signed)·
                      "Attorney for Plaintiff"

It was actually presented, not by Mr. Brett, but by Mr. Zimmerman, who is a lawyer duly admitted to practice to the Bar of this Court. The stipulation was not signed or presented by the United States District Attorney for the Southern District of California, nor any one representing himself to be either such officer or an Assistant District Attorney. There is no substitution of attorneys on file, nor any document executed by the United States District Attorney indicating that he will not or cannot proceed in the instant matter. There was presented and filed at the same time a mimeographed copy of the letter signed by the Attorney General, dated October 19, 1943. It is set forth in full in foot note.[2] It is addressed, "Irl D. Brett, Esq., Special Assistant to the Attorney

---

[2] Irl D. Brett, Esquire
  Special Assistant to the Attorney General
  Federal Building
  Los Angeles 12, California
My dear Mr. Brett:
  I have considered a recommendation by Assistant Attorney General Littell that the Lands Division work in Southern California, which is now conducted under your supervision, be formally separated from the office of Mr. Charles H. Carr, United States Attorney at Los Angeles.

This step seems to be in order because of the vastly increased volume of Lands Division work (approximately ten per cent of the condemnation work in the country is in Southern California) and because the work has been physically removed from his office to other space in the Federal Building.
  Accordingly, and by letter dated August 19, 1943, I apprised Mr. Carr of these facts and, after expressing the opinion that it would no longer be necessary for him to sign pleadings of the

General, Federal Building." Upon the basis "of the vastly increased volume of Lands Division work and because the work has been physically removed from his (the United States Attorney's) office to other space in the Federal Building" and because the United States Attorney (Charles H. Carr became U. S. Attorney June 1, 1943) has discontinued the practice of signing pleadings in Lands Division cases, it states:

"Under these circumstances I have delegated to you, and I hereby specifically direct that you exercise, plenary authority to sign and file on behalf of the United States, any and all pleadings, briefs, papers or documents in the District Court in and for the Southern District of California which you may consider necessary or proper for the conduct of such Lands Division cases as have been, or may be in the future, placed and maintained under your supervision by the Department of Justice. Other Attorneys and Special Attorneys of the Department of Justice assigned to your office may also appear of record in such proceedings and cases and otherwise participate in the conduct thereof as you may authorize and direct."

In summary this general letter of October 19, 1943, delegated to Mr. Brett not only the general power the U. S. Attorney has in civil cases but greater power. "Plenary authority" is "delegated" to Mr. Brett.

There was also filed a letter from the acquiring agency certified to by an appropriate official of the Department of Justice and an original letter signed by an Assistant Attorney General addressed to Mr. Brett, Special Assistant to the Attorney General, wherein he is directed to prepare the complaint and proceed to acquire the lands by condemnation; in addition to this, there is filed a paper signed, "Irl D. Brett, Special Assistant to the Attorney General" which in this case, reads as follows:

"Lands Division Acquisition

"Re: U. S. vs. 1960 Acres of Land, in the County of Riverside, State of California; etc., et al.—No. 2567–PH Civil—Department of Justice No. 33–5–929—1—Acquisition in behalf of the War Department

"To: M. B. Zimmerman, a duly licensed and practicing Attorney of the State of California admitted to practice in the Federal Courts of the Southern District of California and a duly appointed and qualified Special Attorney of the Department of Justice, Lands Division, assigned to the Los Angeles office of the Department of Justice and under the supervision of the undersigned.

"Under and pursuant to the authority vested in me by letter from the Attorney General dated October 19, 1943, you are hereby appointed as co-counsel in the above-entitled action and authorized and directed to appear as an attorney of record on behalf of the plaintiff in said case and to otherwise participate in the conduct of said cause and take any and all proceedings necessary and proper to conclude said action, including the entry of final judgment therein.

"Done at Los Angeles, California, this 23rd day of November, 1943.

"Irl D. Brett      (Signed)
"Irl D. Brett
"Special Assistant to
      the Attorney General."

Lands Division cases, authorized him to discontinue the practice and to refer to the Lands Division staff in Los Angeles all matters relating to Lands Division work. Mr. Carr has informed me, by letter dated August 31, 1943, that he would, pursuant to my authorization, discontinue the practice.

Under these circumstances I have delegated to you, and I hereby specifically direct that you exercise, plenary authority to sign and file on behalf of the United States, any and all pleadings, briefs, papers or documents in the District Court in and for the Southern District of California which you may consider necessary or proper for the conduct of such Lands Division cases as have been, or may be in the future, placed and maintained under your supervision by the Department of Justice. Other attorneys and Special Attorneys of the Department of Justice assigned to your office may also appear of record in such proceedings and cases and otherwise participate in the conduct thereof as you may authorize and direct.

It has come to my attention that, on at least one recent occasion, your exercise of this authority has been challenged or questioned. In order to remove any doubts as to their validity and binding effect upon the United States, I hereby ratify and confirm any and all actions heretofore taken by you which are consistent with the authority defined in the preceding paragraph.

Sincerely,

/s/ Francis Biddle
Attorney General
Exhibit "A"

Thus there is "delegated" to Mr. Brett not just the authority to try any particular or specific case, but control of all land cases—the general and regular work of the U. S. Attorney's Office—and with further power in Mr. Brett to in turn delegate to some other "Special Assistant" or "Special Attorney" the power to act and speak for interests of the United States in condemnation cases, to try cases, to sign pleadings, to sign stipulations for judgment and to do any and all the other things which a lawyer might and can do in connection with such matters.

That Mr. Brett is not only a specially assigned lawyer to particular cases, but construes his authority to be sufficiently broad to in turn re-delegate his power of supervision and authority over other attorneys and cases, is evidenced by the statement that Mr. Zimmerman is "appointed co-counsel" and by the text of a letter which has just come to hand; I quote:

"Department of Justice
"Lands Division
"808 Federal Building,
"Los Angeles 12, California
"November 27, 1943
"Honorable Peirson M. Hall, Judge United States District Court Southern District of California
"Los Angeles, California
"My dear Judge Hall:
"You have already been informed as to the text of my authority from the Attorney General as contained in the letter of October 19, 1943, a mimeographed copy of which is enclosed herewith. Since I find it necessary to be away from Los Angeles for the period commencing with Sunday, November 28, and ending Sunday, December 5, I am electing to exercise my authority to designate Mr. Charles E. Collett, Special Assistant to the Attorney General, to act as Acting Head of the Los Angeles office of the Lands Division during my absence. I am taking this action pursuant to that portion of Mr. Biddle's letter which reads:

"Other attorneys and special attorneys of the Department of Justice assigned to your office may also appear of record in such proceedings and cases and otherwise participate in the conduct thereof as you may authorize and direct.'

"During such period of absence, I will appreciate it if you will honor Mr. Collett's signature and actions in behalf of the Lands Division of the Department of Justice in my place and stead.
"Respectfully,
"(Signed)   Irl D. Brett
"Irl D. Brett
"Special Assistant to the Attorney General."

In the consideration of any question of jurisdiction, two primary things are settled beyond the requirement of citation of authority and they must be kept in mind: First, while the Constitution provides for the creation of courts, the powers the District Courts exercise are those which Congress says they are to exercise; second, the United States can appear as a litigant only when, and can act only through, the officials authorized to do so by Congress. It is thus seen that the question resolves itself into one of statutory interpretation.

Section 485, Title 28 U.S.C.A., is the section generally prescribing the duties of United States District Attorneys; the pertinent portion reads as follows: " * * * It *shall*[3] be the *duty* of every *district attorney* to *prosecute,* in his district, all delinquents for crimes and offenses cognizable under the authority of the United States, and *all civil actions* in which *the United States are concerned * * *.*"

Sec. 481 of the same Title requires the appointment in each district of a person to act "as attorney for the United States"; and permits his removal; Sec. 482 provides for a term of office of four years; Sec. 483 permits the appointment of Assistant District Attorneys by the Attorney General only upon the written opinion of the Judge stating facts "as distinguished from conclusions" of the necessity therefor; and Sec. 484 relates to clerical assistants.

Title 40 U.S.C.A. § 255 et seq. contains the specific provisions relating to the condemnation and acquisition of lands by eminent domain by the United States. Sec. 255 requires the written opinion of the Attorney General as to the validity of title; Sec. 257 prescribes it to be the duty of the Attorney General upon request of the appropriate officer of a Department to *cause* proceedings to be commenced for condemnation, and Sec. 256 requires that *"all legal services* connected with the procurement of titles to site for public buildings" (ex-

---

[3] All italics throughout this memo where used on quotations are supplied.

cept for light houses, etc.,) *"shall be rendered by the United States district attorneys."*

Title 5 U.S.C.A. §§ 291, 301 to 317, inclusive, relate to the creation of the Department of Justice, the establishment of the office of Attorney General, prescribe his general duties and powers, authorize the appointment of assistants, not only to the District Attorneys, but 'Special Assistants to the Attorney General as well. Not all of these sections are pertinent to the inquiry. Sec. 312 (in connection with Title 28 U.S.C.A. § 483) authorizes the Attorney General to employ Assistant District Attorneys. Sec. 317 gives the Attorney General direction over district attorneys. Sec. 314 and the last sentence of Sec. 306 prohibit the payment of compensation to any person as attorney for the Government other than District Attorneys or their Assistants appointed under 312, "except in cases specially authorized by law." Secs. 315 and 310 prescribe the manner by which any person other than the Attorney General, Solicitor General, Assistant Attorney General, District Attorney or Assistant District Attorneys may be "specially authorized by law" to represent the United States in any "case".

The text of the pertinent Sections is as follows:

"§ 312. Counsel to aid district attorneys. The Attorney General shall, whenever in his opinion the public interest requires it, employ and retain, in the name of the United States, such attorneys and counselors at law as he may think necessary to assist the district attorneys in the discharge of their duties, and shall stipulate with such assistant attorneys and counsel the amount of compensation, and shall have supervision of their conduct and proceedings."

"§ 483. (T. 28) Assistant district attorneys; official residence. Except as provided in Section 591 of this title, whenever, in the opinion of the district judge of any district, including the District of Columbia, evidenced by writing, the public interest requires it, one or more assistant district attorneys may be appointed, by the Attorney General; but such opinion shall state to the Attorney General the facts as distinguished from conclusions, showing the necessity therefor."

"§ 317. Superintending district attorneys and marshals. The Attorney General shall exercise general superintendence and direction over the attorneys and marshals of all the districts in the United States and the Territories as to the manner of discharging their respective duties; and the several district attorneys and marshals are required to report to the Attorney General an account of their official proceedings and of the state and condition of their respective offices, in such time and manner as the Attorney General may direct."

"§ 306. Legal services for departments. The officers of the Department of Justice, under the direction of the Attorney General, shall give all opinions and *render* all *services* requiring the skill of persons learned in the law necessary to enable the President and heads of departments, and the heads of bureaus and other officers in the departments to discharge their respective duties; and shall, on behalf of the United States, procure the proper evidence for, and conduct, prosecute, or defend all suits and proceedings in the Supreme Court and in the Court of Claims, in which the United States, or any officer thereof, as such officer, is a party or may be interested; and *no fee* shall be *allowed* or *paid* to *any* other *attorney* or *counselor at law* for *any service herein required* of the *officers of the Department of Justice,* except in the cases *provided* by *section 312 of this title."*

"§ 314. Counsel fees restricted. No compensation shall be allowed to any *person, besides* the *respective district attorneys* and *assistant district attorneys* for services as an attorney or counselor to the United States, or to any branch or department of the Government thereof, except in cases specially authorized by law, and *then* only on the certificate of the Attorney General that *such services* were actually rendered, and that the same could not be performed by the Attorney General, or Solicitor General, or the officers of the Department of Justice, or by the *district attorneys."*

"§ 315. Appointment and oath of special attorneys or counsel. Every attorney or counselor who is *specially retained,* under the authority of the Department of Justice, *to assist in the trial of any case* in which the Government is interested, shall *receive* a *commission* from the head of such department, as a *special assistant to the Attorney General,* or *to some one* of the *district attorneys,* * * * as the *nature of the appointment* may require; and shall take the oath required by law to be taken

by the *district attorneys,* and shall be subject to all the liabilities imposed upon them by law. Foreign counsel employed by the Attorney General in special cases shall not be required to take the oath required by this section."

"§ 310. Conduct of legal proceedings. The Attorney General or any officer of the Department of Justice, or any attorney or counselor *specially appointed* by the Attorney General under any provision of law, *may,* when thereunto *specifically* directed by the *Attorney General,* conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, *which district attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."*

Secs. 312 and 317 came into the law by the Act of August 2, 1861, 12 Stat. 285; Sec. 306 was cast in its present form by Sec. 14 of the Judiciary Act of 1870; and Secs. 314 and 315 are portions of Sec. 17 of the Judiciary Act of 1870, 16 Stat. 164; Sec. 310 was introduced into the law in 1906, 34 Stat. 816.

Historically, the powers and duties of United States Attorneys have changed little since the office was first created. In fact the identical language first used, is still the general definition of their powers and their duties.

The Judiciary Act of 1789, 1 Stat. 73 at page 92, by Section 35 provided for the appointment in each district, "[of] a meet person learned in the law to act as attorney for the United States * * *, who shall be sworn or affirmed to the faithful execution of his office, *whose duty it shall be to prosecute in such district all delinquents for crimes and offences, cognizable under* the authority of the United States, and all civil actions in which the United States shall be concerned* (except before the Supreme Court in the District in which that Court shall be holden)."

But for the last clause, this identical provision defining the general duties and powers of U. S. Attorneys has been carried through all the various systems of re-casting and re-enactments of the laws and appears now as the first part of 28 U.S.C.A. § 485, hereinbefore quoted.

By the same Sec. of the Judiciary Act of 1789, the office of Attorney General was created. His duties were generally to advise the President and heads of departments and to conduct cases in the Supreme Court. He had no connection with or control over U. S. District Attorneys.

Except for minor changes by the Act of May 15, 1820, 3 Stat. 596, and Act May 29, 1830, 4 Stat. p. 414, District Attorneys and the Attorney General continued to function independent of one another, until 1861. At that time (Act of August 2, 1861, 12 Stat. 285) the Attorney General was charged with the general superintendence and direction of the District Attorney in the United States, now 5 U.S.C.A. § 317, and was authorized to retain such attorneys and counselors-at-law as he may think necessary to assist the District Attorney.

In an opinion by Justice Clifford, who had been Attorney General, the Supreme Court held in 1869 that, notwithstanding this power of supervision and direction, the nisi prius courts had no jurisdiction to proceed in a case to which the United States was a party, unless the District Attorney or someone designated by the District Attorney represented the Government. Confiscation Cases, 7 Wall. 454, 74 U.S. 454, 19 L.Ed. 196.[4]

---

[4] (Page 457 of 7 Wall., 19 L.Ed. 196) "Civil suits, in the name and for the benefit of the United States, are also instituted by the district attorneys, and, in the absence of any directions from the Attorney-General, he controls the prosecution of the same in the district and circuit courts, and may, if he sees fit, allow the plaintiffs to become nonsuit, or consent to a discontinuance.

"Settled rule is that those courts will not recognize any suit, civil or criminal, as regularly before them, if prosecuted in the name and for the benefit of the United States, unless the same is represented by the district attorney, or some one designated by him to attend to such business, in his absence, as may appertain to the duties of his office. * * *"

(Page 458 of 7 Wall., 19 L.Ed. 196) "Control of these suits, therefore, while they were pending in the Circuit Court, belonged to the district attorney under the general superintendence and direction of the Attorney-General, and he might, if he had seen fit, have discontinued them at any stage of the proceedings prior to the appeals. Such control on the part of the district attorney ceases whenever such a suit, civil or criminal, is transferred to this court by writ of error, appeal, or certificate of division of opinion, as the thirty-fifth section of the Judiciary Act

Except for the Attorney General's duties in the Court of Claims (Act of June 25, 1868, 15 Stat. 75) and his general supervision over U. S. Attorneys, the general powers and duties of the Attorney General and United States Attorneys remained as originally prescribed in 1789 without further change until the creation of the Department of Justice by the Act of June 22, 1870, 16 Stat. 162.

For a number of years prior to 1870 there had been considerable concern expressed in Congress, and publicly, over the great number of overlapping and conflicting law offices of the Government working independently of and at odds with the local District Attorneys and the Attorney General. The desire to cure this began to take form on the hearings on the Court of Claims Bill in 1867. The ensuing arguments resulted finally in the passage of the Department of Justice Act of 1870. The principal cause for the passage of the Act was the "multiplicity of conflicting legal opinions given by the law officers in the several departments * * * expenditures for special counsel, including large retainers paid eminent lawyers who at times rendered little service in return—numerous private counsel appointed by Cabinet officers." Although the Act of 1861 permitted the supervision of the District Attorneys by the Attorney General, the actual supervision of these officers was not begun until after the passage of the Act of 1870. Cummings and McFarland, "Federal Justice", Chapter XI.

By that Statute, the Department of Justice was created, and the head of it was designated to be the Attorney General. He was authorized to appoint two Assistants whose duties were generally to assist the Attorney General and the Solicitor General, which office was likewise created by that Statute. In addition to authority to appear in the Supreme Court given by the Act of 1789, and in the Court of Claims, by the Act of 1868, the Attorney General was authorized (Sec. 5) to appear in other courts.

The fact that the Act did not limit or restrict the power of the District Attorney has some significance when searching for the intent of Congress. Particularly is this true in view of the comment and plain language of the Supreme Court in the Confiscation Cases, supra, while the subject was under consideration by Congress the year before, holding the lower courts did not have jurisdiction unless the United States was represented by the District Attorney. It would indicate that Congress did not intend to alter those powers and duties, but intended by the strict limitations of Sec. 17 of the Judiciary Act that District Attorneys and their Assistants should continue to do all of the legal work for the Government, except only in a case where, for some reason or another, neither the District Attorney, because for instance the case might require him to act beyond his District. United States v. Winston, 1897, 170 U.S. 522, 18 S.Ct. 701, 42 L.Ed. 1130; Kelly v. United States, 2 Cir., 1937, 89 F.2d 866, the Attorney General, Solicitor General, nor any *regular* officer of the Department could act, and that then and then only should there be a *Special* Assistant appointed.

By Sec. 17 it was made unlawful for the Secretary of any of the Executive Departments to employ Attorneys or counsel at the expense of the United States, but they were required to call upon the Department of Justice; the allowance of any fee to any person as counsel or attorney, except District Attorneys and their Assistants was prohibited unless the fee to such other person was "hereafter authorized by law" and "then only on the certificate of the Attorney-General that such services were actually rendered, and that the same could not be performed by the Attorney-General or solicitor-general or officers of the department of justice or by the district attorneys." Now 5 U.S.C.A. § 314. In further limitation of the use of persons as lawyers, other than the regular law officers, Section 17 also provided: "and every attorney and counselor (sic) who

also provides, that it shall be the duty of the Attorney-General to prosecute and conduct all suits in the Supreme Court in which the United States shall be concerned, and such has been the unbroken practice of this court in such suits from the organization of the judicial system to the present time. Appointed, as the

Attorney-General is, in pursuance of an act of Congress, to prosecute and conduct such suits, argument would seem to be unnecessary to prove his authority and to dispose of these cases in the manner proposed in the respective motions under consideration. * * *"

shall be *specially retained,* under the authority of the Department of Justice, to assist in the trial of any *case* in which the government is interested, shall *receive a commission* from the head of said Department, as a *special assistant* to the Attorney-General, or to some one of the district attorneys, as the nature of the appointment may require, and shall take the *oath* required by law to be taken *by the district* attorneys, and shall be subject to all the liabilities imposed upon such officers by law." Now 5 U.S.C.A. § 315.

The Attorney General could (By Sec. 5) in person conduct and argue "any case" in any court of the United States in which the United States is interested or, may direct the "Solicitor General or any officer of the Department of Justice to do so" now 5 U.S.C.A. § 309; and he could send the "Solicitor General" or any such officer to any State or Department in the United States "to attend to the interests of the United States in any suit pending in any courts of the United States, or in the courts of. any State."

▮ In view of the requirements in Sec. 17 of the Act of 1870, now 5 U.S.C.A. §§ 314, 315, concerning the employment of "special assistants" and the use of the singular "any case," it must be concluded that the phrase "any officer" as used in Sec. 5 of the Act of 1870 means any *regular* officer and did not comprehend a "special assistant" mentioned in Sec. 17.

These general sections, now contained in Titles 5, and 40 U.S.C.A., were infrequently before the Courts. It was settled in 1879 however that "any officer" of the Department of Justice meant any "regular officer".

United States v. Crosthwaite, 1879, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507, 508, was a suit brought by one appointed as a Special Assistant to the Attorney of the United States for the District of Idaho to recover compensation. The claim was made for compensation without procuring a certificate from the Attorney General that such services were actually rendered in accordance with what was then Sec. 365 of Revised Statutes, 5 U.S.C.A. § 314. This was a portion of Sec. 17 of the Act of June 22, 1870, creating the Department of Justice. In that case Crosthwaite received a commission as a Special Assistant to the United States Attorney. He took the oath of office and performed the duties assigned

to him. The Court in denying the claim recited the provisions of the Act of June 22, 1870, and after quoting Secs. 363, 364, 365 and 366 of Revised Statutes, now sections 312, 313, 314 and 315 respectively of Title 5 U.S.C.A., said (page 379 of 168 U.S., page 108 of 18 S.Ct., 42 L.Ed. 507):

"the object of these statutory provisions is manifest. While giving the attorney general full power to employ counsel for the United States to assist those upon whom regularly devolved the duty of representing the government in the courts without special compensation, congress intended to restrict the exercise of that power to the extent indicated in section 365. It was left to that officer to determine whether the public interests required the employment of special counsel. But that the discretion given to him might not be abused, and that unnecessary expense might be avoided, it was declared (section 365) that, except in the cases of the respective district attorneys and assistant district attorneys, no compensation should be allowed to any person, as an attorney or counselor for the United States, unless specially authorized by law, and then only on the certificate of the attorney general that such services were actually rendered, and that the same could not have been performed by the attorney general, or by the solicitor general, or by the officers of the department of justice, or by the district attorneys. * * *

"This construction of the statute necessarily requires a reversal, with direction to render judgment for the United States, unless it be held that the plaintiff, while acting under his commission as 'a special assistant to the attorney of the United States' during a single term of the Circuit Court of the United States for the district of Idaho, and mainly for a particular class of cases, was an assistant district attorney, within the meaning of the words in section 365, 'beside the respective district attorneys and assistant district attorneys;' for, in the case of the officers last named, no formal certificate is required from the attorney general. But we cannot so interpret the statute. The assistant district attorneys referred to in that section are those who are regular assistant district attorneys, serving the government at fixed salaries, and employed not for special cases or particular legal business, nor for a specified term of court, but generally and regularly for all the business of the government that may

arise in the courts of the district in which they serve. This interpretation finds support in many appropriation acts. In the sundry civil appropriation act of October 2, 1888, 25 Stat. 505, 545, c. 1069, the distinction is made between 'regular assistants to United States district attorneys, who are appointed by the attorney general at a fixed annual compensation,' and 'assistants to United States district attorneys in special cases.' This distinction has been made in subsequent appropriation and deficiency acts."

See also United States v. Huston, D.C. E.D.Ohio 1928, 28 F.2d 451.

In 1896 Congress required by the Act of May 28, 29 Stat. 181, now 483, Tit. 28 U.S. C.A., that Assistant District Attorneys could be appointed only upon the certificate of the District Judge "showing the necessity therefor"—except in Alabama and Southern New York.

Quite evidently Congress was determined that the legal work of the Government should be done whenever possible through the *local regular officers* of the Government.

Thereafter the only case of consequence arising before 1903 was United States v. Johnson, 173 U.S. 363, 19 S.Ct. 427, 431, 43 L.Ed. 731, decided in 1899.

Johnson, while the U. S. District Attorney for the Southern District of New York, was claiming extra compensation as for special services in a suit to condemn lands for a mortar battery upon direction of the Attorney General at the request of the Secretary of War. He had presented two bills totaling $6,500, which the Attorney General approved and allowed, but which the Accounting Officers of the Government refused to pay. In this refusal they were upheld by the Supreme Court. While the Act of March 2, 1889, 40 U.S.C.A. § 256, which requires that all legal services connected with the procurement of title should be rendered by U. S. District Attorneys was

in force at the time the direction by the Attorney General was given to Johnson in 1891, the Supreme Court, nevertheless, made no reference to that Statute in the Opinion, but based its conclusions upon the Statute of August 1, 1888, 40 U.S.C.A. § 257, which required the Attorney General upon request of the appropriate officer of the Department "to cause proceedings to be commenced for condemnation", and upon the general statute prescribing it to be the duty of the United States District Attorney to prosecute all civil actions in which the U. S. is concerned. 28 U.S.C.A. § 485.

The Court stated the question as follows:

"The controlling question, therefore, in the present case is whether Johnson was *under a duty imposed upon him as district attorney to perform the services* for which he here claims *special compensation*. If such was his duty as defined by law, then he is forbidden by statute from receiving any special compensation on account of such services; this for the reason that no appropriation for such compensation has been made by any statute explicitly stating that it was for such additional pay, extra allowance or compensation. Rev.St. §§ 1764, 1765 [5 U.S.C.A. §§ 69, 70]. On the other hand, if his duties as district attorney did not embrace such services as he rendered, and for which he here claims special compensation, then he is entitled to be paid therefor without reference to the regular salary, pay, or emoluments attached to his office."

Basing its opinion upon which it referred to as the "clear and explicit" language of the Statute (page 378 of 173 U.S., page 432 of 19 S.Ct., 43 L.Ed. 731) and upon its previous holdings in Gibson v. Peters, 150 U.S. 342, 14 S.Ct. 134, 37 L.Ed. 1104, and upon the Opinions of the Attorney General contained in 7 Op.Atty.Gen. 84;[5] 9 Op.Atty.Gen. 146,[6] and 19 Op.Atty.Gen. 121,[7] and the views of the "second comptroller of the treasury" in Cousar's Digest 12, the Court came to the conclusion that

---

[5] "A contrary construction would lay the foundation for extra compensation to district attorneys in almost every case in which they appear in civil actions" [173 U.S. 363, 19 S.Ct. 433, 43 L.Ed. 731].

[6] (United States v. Johnson, 173 U.S. page 380, 19 S.Ct. 433, 43 L.Ed. 731) "When a duty is enjoined upon him by the law of his office, and not merely by the request of a department, he is bound to perform it, and take as compensation

what the law gives him. That is his contract; and if it be a bad one for him he has no remedy but resignation. The subject is not open to a new bargain between him and any other officer of the government. All criminal prosecutions and all civil suits in which the United States are a party of record fall within this principle."

[7] See also 2 Op.Atty.Gen. 318, 319; 8 Op.Atty.Gen. 399; 5 Op.Atty.Gen. 261, 263.

Johnson "was under a duty, as district attorney, to represent the United States in the condemnation proceedings."

The next case of consequence was decided in 1903 when the then Circuit Court for the Southern District of New York decided the case of United States v. Rosenthal, 121 F. 862.

It was a criminal case, but the command of the Statute to the District Attorney in civil and criminal cases is contained in the same words—"It *shall* be the duty of every district attorney to *prosecute* * * * *all delinquents* * * * and *all civil actions* * * *"* the statute reads. 28 U.S.C.A. § 485. And none of the other statutes dealing with the appointment of Special Assistants make any distinction between civil and criminal cases.

The Court held that neither the Attorney General, Solicitor General nor any officer of the Department of Justice, nor Special Assistants were authorized to conduct or to aid in the conduct of proceedings before the Grand Jury: That the Attorney General, the Solicitor General, and the Special Assistants could appear at the trial, but not *until* it was a *trial,* or until there was a suit pending. The Attorney General apparently regarded this as correctly stating the law, because instead of seeking a reversal even with the support of United States v. Cobban, C.C.Mont.1904, 127 F. 713, which disagreed specifically with the Rosenthal case, the Attorney General in 1906 sought and secured the passage of the Act of June 30, 1906, 34 Stat. 816, which is now Sec. 310 of Title 5 of the U.S.C.A. The passage of this law was secured particularly to overcome the effect of the Rosenthal case, supra.

The only change, then, from the law as previously announced in the Rosenthal and Johnson cases, supra, is that occasioned by the terms of Sec. 310, Title 5 U.S.C.A. Hence the question is narrowing down to the scope and meaning of that one Section.

In three cases the Supreme Court made some mention of Sec. 310, Title 5 U.S.C.A. United States v. Thompson, 1920, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333, 340; Ponzi v. Fessenden, 1922, 258 U.S. 254-262, 42 S. Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879; McGrain v. Daugherty, 1927, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, 583, 50 A.L.R. 1. In none of these cases was there any consideration of the validity of either the Section or of the appointments made under

them, or of the actions taken by the appointees.

This Section, 5 U.S.C.A. § 310, is discussed, as well as the general powers of the Attorney General and Special Assistants, in United States v. Virginia-Carolina Chemical Company, C.C.M.D.Tenn.1908, 163 F. 66. The Court held the indictment void, because it was returned before June 30, 1906, the date of the passage of what is now Sec. 310 of Title 5 U.S.C.A. In this case there were Special Assistants appointed and the commission was set forth in full and filed with the Court. The commissions authorized them to assist in the investigation before the Grand Jury of the so-called fertilizer trust connected with the Virginia-Carolina Chemical Company, etc. In other words, the commission directed them to conduct an investigation of a particular named defendant, concerning a specified subject matter.

The effect of this case is to hold that there is compliance with the Act of 1906 by filing the letter of appointment or commission specifically directing the Special Assistant to conduct a particular case or concerning particular subject matter and persons involved.

United States v. Cohen, D.C.Mass., 273 F. 620, 621, decided in 1921, fifteen years after the enactment of the Statute of 1906 holds that a Special Assistant, even though he may be authorized to conduct Grand Jury proceedings concerning a specified matter, does not have authority to file a criminal information in the same matter. The authority is limited to "what he is specifically directed to do."

The commissions in that case were copious and explicit; were signed by the Attorney General, and named various persons and the particular nature of the crime with which they were charged, and either they were filed with the Clerk or exhibited to the Court, as they are set forth fully in the opinion. The Court there said:

"The power to bring informations which charge crime and on which warrants of arrest issue is a great power, carrying with it possibilities of serious oppression, if improperly used. It involves the exercise of a quasi judicial discretion and the performance of duties widely different from those of an advocate in submitting a matter to the grand jury. The power is lodged in the United States Attorney (by statute as to certain crimes, R.S. § 1022) (Comp.St. § 1686, [18 U.S.C.A. § 555]), and

in the Attorney General. No statute authorizing the delegation of it has come to my attention, except the act of 1906 which, as above noted, limits the delegation to such matters as are covered by special direction. Both by the statute, therefore, and by general principles of law, a delegation of this power, if intended, must be made in clear and precise terms, and not left to inference or implication; it is not conferred by authority to conduct grand jury proceedings. For these reasons, Mr. Horgan was not, in my opinion, authorized to bring these informations, and as they were not submitted to or approved by the Attorney General they were not legally brought."

In United States v. Fall, 1925, 56 App. D.C. 83, 10 F.2d 648, the Court determined that a special resolution adopted by Congress authorizing an investigation and prosecution did not divest the District Attorney or Special Assistant appointed under the provisions of Section 310 of their power to appear and did not invalidate an indictment if they participated in the Grand Jury proceedings.

Hale v. United States, 8 Cir., 1928, 25 F. 2d 430, was a criminal case wherein the Court held that one appointed as a Special Assistant could appear lawfully as a stenographer in a Grand Jury room, contrary to United States v. Goldman, post, and followed Wilson v. United States, 2 Cir., 229 F. 344; Wilkes v. United States, 6 Cir., 291 F. 988; May v. United States, 8 Cir., 236 F. 495, and refused to follow Latham v. United States, 5 Cir., 226 F. 420, L.R.A.1916D, 1118, the distinction being that the one who was appointed in the Latham case was not a lawyer, but was a Clerk.

In United States v. Huston, D.C.N.D. Ohio 1928, 28 F.2d 451, on a plea in abatement against an indictment, the Court held that when considering a designation of a Special Assistant made under Sec. 310 or 315, the statutes must be strictly construed and strictly followed.

United States v. Goldman, D.C.Conn. 1928, 28 F.2d 424, was a criminal case. A plea in abatement was made and sustained on the ground that a stenographer appeared in the Grand Jury room by virtue of an appointment as a Special Assistant to the United States Attorney and the Court held that commissions "must designate the specific case or cases to which the employment relates, and the district or districts to which it extends." Page 430 of 28 F.2d. Otherwise the Attorney General might give some one "a roving commission without any limitations, extending to every district in the United States and embrace all criminal investigations."

The court said:

"The commission here under consideration does not specify any particular case, or give the name of any particular offender who may be proceeded against, either alone or with others associated with him. On the contrary, the commission provided that Mr. Roberts was 'to assist in the investigation and prosecution of alleged violations of the National Prohibition Act [27 U.S.C.A. § 1 et seq.] and in that connection you are specifically directed to conduct * * * any kind of legal proceedings, * * * including grand jury proceedings.' From this language it is clear that an appointee under it could replace or act with the duly constituted district attorney for this district, and either take charge of or participate in investigations for alleged violations of the act. But the Act of June 30, 1906, under which the Attorney General derives his power to issue the commission, cannot be construed so as to give the Attorney General such unlimited powers. The constitutional, statutory, and specifically designated officials only are permitted to perform such duties, except as qualified and extended by the Act of June 30, 1906, and as to the trial of cases under the provisions of Revised Statutes, §§ 363–366 [5 U.S.C.A. §§ 312–315]."

In Sutherland v. International Insurance Co. of New York, 2 Cir., 1930, 43 F.2d 969, 970, the Court reviewed some of the powers of Special Counsel and held that the Act creating the office of Alien Property Custodian did not authorize an attorney to appear other than those appointed by and under the supervision of the Attorney General and in the Department of Justice. The Court said:

"The government has provided legal officers, presumably competent, charged with the duty of protecting its rights in its courts. It has specifically authorized these to act, exacting from them compliance with the formalities required of a public officer, even when appointed by the Attorney General.

" * * * Congress, having so provided for the prosecution of civil suits, can

*scarcely be supposed to have contemplated a possible duplication in legal personnel."*

Of particular significance is the fact that this opinion, written twenty-four years after the adoption of Section 310, 5 U.S. C.A., refers with approval to two Civil Cases: United States v. Morris, 1822, Fed. Cas.No. 15816 (a suit for damages); West v. Doughty, Fed.Cas.No. 14986 (an injunction suit which was decided six days after the Judiciary Act of 1870 was passed). In the latter, the Court said, by Blatchford, J.: "This court can recognize the United States as a plaintiff on the record, only when the record shows that the United States appear as plaintiffs by the district attorney of this district"; And in the former: "The court judicially knows this officer (the United States District Attorney)—his commission is shown to it— he acts in the presence of the court in all criminal prosecutions, and on all occasions where the interests of the United States are concerned * * * the court * * * can and ought to take notice of an objection whenever its attention is drawn to the fact; and although it may not in ordinary cases, unless under special circumstances, call for the production of any authority for an attorney of this court to appear in a particular suit, yet knowing that the United States have an attorney of their own, no other should merely at the instance of an individual be permitted to act in his place."

In United States v. Amazon Industrial Chemical Corp., D.C.Md.1931, 55 F.2d 254, the Court held that a commissioner authorizing a Special Assistant to the Attorney General to participate in Grand Jury proceedings was not defective because it failed to refer to the Statute allegedly violated, although such practice was customary, nor was the indictment void because persons were indicted in · addition to those named in the commission, nor was the indictment void because the Special Assistant took his oath in Washington instead of the district where the prosecution occurred.

In Belt v. United States, 5 Cir., 1934, 73 F.2d 888, the Court held that the indictment was not void because the Special Assistant had failed to file his appointment of record, where the appointment was a valid appointment in writing.

In United States v. Atlantic Comm. Co., D.C.E.D.N.C.1942, 45 F.Supp. 187, Page 190, "The record discloses that the special attorneys were duly appointed, commissioned and qualified as required by the statutes, 5 U.S.C.A., §§ 310, 315, and that the District Attorney not only authorized the prosecution but filed a notification and petition, alleging the necessity," of the proceedings under attack; and that "the District Attorney and his assistants assisted in the investigation and prosecution, but did not appear before the grand jury." There is no analogy in that case with the case at bar, because the District Attorney there did actually participate, but here the District Attorney's name does not appear on the pleadings, but in many pending cases his name has been stricken off by drawing a line through it.

In Shushan v. United States, 5 Cir., 117 F.2d 110, 114, (syl. 5), 133 A.L.R. 1040, the Court holds that all of the defendants need not be named in the letter of appointment in a criminal case and that the commission need not be filed, but in that case, counsel was "specially" appointed and "specifically directed" and the commissions were either filed in the case or were presented to the Court.

In fact in all of the cases cited in the memo left with me recently by Mr. Brett either the commissions were filed with the Clerk or exhibited to the Court and specially described the particular kind of prosecution or investigation that the Attorney was to conduct. United States v. Sheffield Farms, D.C.N.Y.1942, 43 Fed. Supp. 1; United States v. Martins, D.C. Mass., 288 F. 991; United States v. Central Supply Ass'n, D.C.N.D.Ohio 1941, 37 F.Supp. 890; Belt v. United States, 5 Cir., 73 F.2d 888; United States v. Cohen, D.C.Mass.1921, 273 F. 620.

In addition to the language of the Statutes, their history and the decisions on them, there is a fourth guide to their meaning: That is, the interpretation of them by the officials charged with their enforcement, in this case the Attorney General's Office and the Department of Justice.

In this connection the Statutes here involved have received a uniform and consistent construction at least since 1929. The duties of District Attorneys, the methods, manner of appointment, assignment, and powers of Special Assistants, are all outlined in a book issued in 1929 over the signature of the then Attorney General. The book is entitled "Book of Instructions to United States Attorneys, Marshals, ·

Clerks, and Commissioners." The foreword states:

"To United States attorneys, marshals, clerks, and commissioners (other than in the District of Alaska and the Canal Zone):

"In the execution of your official duties, the instructions herein given will be your guide. They supersede former instructions so far as they are in conflict therewith; become effective October 1, 1929, and remain effective until reissued, except as they may be modified from time to time by later legislation, decisions of the courts or rulings of the Comptroller General, and departmental circulars and orders.[8]

"Respectfully,

"William D. Mitchell

"Attorney General."

A search of the Statutes, Decisions, Federal Register, the Code of Federal Regulations and inquiry from the office of the United States Attorney indicates that the instructions, insofar as they concern the subject matter of this memo remain unmodified, unamended and unchanged by legislation, decisions of the courts, rulings of the Comptroller General or Departmental circulars or departmental orders.

Under the heading "Instructions to United States District Attorneys, Chapter 1, Administrative and Fiscal Matters" is a sub-heading "Special Assistants To the Attorney General and to District Attorneys", which reads as follows:

"(985) Special Assistants to the Attorney General and to United States attorneys are appointed and employed when necessary under section 366, R.S.U.S. [5 U.S.C.A. § 315] in *special* cases only. Each monthly voucher for compensation must therefore show on its face, by titles, the particular case or cases in which the services were rendered; but if such cases are so numerous as to render it impracticable to name all of them on the face of the voucher, a portion of the titles of such cases will be sufficient. If the appointment provides for services to be rendered, in special cases under the internal revenue laws, national prohibition laws, income tax laws, or banking laws, the statement on the face of the voucher that the services were rendered in special cases assigned under any of the above mentioned laws will be sufficient."

"(987) Special assistants may not be employed to perform the duties of a regular assistant. (See 4 Comp. 490 and [United States v. Crosthwaite] 168 U.S. 375 [18 S.Ct. ·107, 42 L.Ed. 507])

"(988) Special assistants must take the oath of office prescribed by section 1757, R.S.U.S. [5 U.S.C.A. § 16], and forward the same at once to the Department of Justice, stating therein the date of entrance upon duty. A copy of this oath, duly executed, *should be filed with the clerk of the district court.*"

Chapter II of the "Instructions to District Attorneys" is entitled "Legal Matters" with the sub-head "Duties"

"(1115.) Control of causes.—The control (extrajudicial) of the conduct and disposition of all litigation, both civil and criminal, in which the Government of the United States is interested, either directly or indirectly, is at all times in the Attorney General of the United States.

"(1116) Section 771, R.S. (now 485 Title 28 U.S.C., [28 U.S.C.A. § 485]), prescribes the general duties · of district attorneys in both civil and criminal matters. They shall conduct and direct all cases except where a special assistant to the Attorney General is specially appointed for that purpose in specific cases, although there is no objection to assistance from attorneys connected with other offices of the Government and with the offices of the solicitor of the various departments, in the preparation and trial of cases, as same is often very helpful and desirable. But it must be understood that they assist only, and do not conduct or direct cases in which they may be interested.

"(1117) Among the specific duties required by various statutes are the initiation and prosecution, or defense of, or performance of, other legal services in connection with:

"(b) The procurement of title for public buildings, other than life-saving stations and pierhead sites (see R.S., sec. 335 [355] [33 U.S.C.A. § 733, 34 U.S.C.A. § 520, 40 U.S.C.A. § 255, 50 U.S.C.A. § 175]; 25 Stat. 941); suits for the partition of

---

[8] It is not assumed that the letter set forth in Footnote 2 will be contended to be a "departmental order", as it is quite obvious that the promulgating direction contemplated the "Instructions" should be changed or amended only by departmental orders of general application.

882

land in which the Government is a tenant in common or joint tenant (see 30 Stat. 416 [28 U.S.C.A. §§ 41(25), 766]) ; to restrain the unlawful inclosure of public land (See 23 Stat. 321 [43 U.S.C.A. § 1061 et seq.].)

██ And in Chapter 1 of Part Three in section 975, which reads as follows:

"The act of March 2, 1889, providing that all legal services connected with the procurement of title to sites for public buildings shall be rendered by district attorneys, not only requires such services to be performed by the district attorney, but prohibits the payment of compensation to another attorney employed for that purpose. (See sec. 6904, Compiled Stats. 1913 [40 U.S.C.A. § 256])".[8a]

From these excerpts it is clear that the Attorney General when promulgating the "Book of Instructions" not only regarded the statutes as clear and specific, but also concluded from their history and the decisions construing them that the law required that "the initiation and prosecution" of suits for the "procurement of title" for public buildings were among the "specific duties" of District Attorneys and that "another attorney employed for the purpose" could not be paid for the services.

██ There is thus applied the fourth rule of statutory construction, viz., the practical construction given to statutes by those charged with this enforcement. And when that has continued for many years it is strong evidence of the correctness of that construction. Wright v. Central of Georgia R. Co. 236 U.S. 674, 35 S.Ct. 471, 59 L.Ed. 781. Continuous practical construction of and proceedings under a statute by public officers in discharge of their duties should control and be followed, unless manifestly wrong. Surgett v. Lapice, 8 How. 48, 49, 12 L.Ed. 982; Schell v. Fauche, 138 U.S. 562, 11 S.Ct. 376, 34 L.Ed. 1040.

It cannot be said that the construction of the statute embodied in the Book of Instructions (supra) is clearly erroneous or manifestly wrong. So far as I can learn, the practice ever since the enactment of the Statute of 1906 (in fact, since the decision in United States v. Johnson, supra), has been to require the United States District Attorney to initiate and prosecute all condemnation proceedings in land matters. Successive Attorneys General, at least since 1929, the date of the issuance of the Book of Instructions, have, in operating according to it, construed Sec. 256 of Title 40 U.S.C.A. to be mandatory upon District Attorneys in Condemnation proceedings.

██ Thus, the construction of the Statute by the office of the Attorney General coincides with the language of the Statutes, their history, and the decisions on them, and, in adherence to these guides, I conclude that the District Attorney must "initiate and prosecute" condemnation proceedings on behalf of the Government, in order to give this Court jurisdiction.

If as a matter of policy those who are to assist the District Attorney in condemnation proceedings are to be "Special Assistants" to the Attorney General or "Special Attorneys" in the Department of Justice, rather than regular Assistant District Attorneys, then in further abidance with these rules of statutory construction, I must conclude that I have no jurisdiction unless such Attorney is "specially appointed" and "specially directed" by the Attorney General in each case.

██ In view of the fact that Congress created by statute several regular Assistant Attorneys General, whose selection and appointment is subject to the same formality as the Attorney General (nomination by the President, and confirmation by the Senate), it is reasonable to conclude that Congress intended that such general and regular officers can be designated by the Attorney General to do at least some of the things which by statute the Attorney General is authorized to do, among which is the power to specifically direct any specially appointed attorneys, or any regular officers of the Department of Justice, to his duty on general cases. But I find no sanction for jurisdiction of this Court in a case where "the plenary" power of the Attorney General is delegated to a "Special Assistant" to in turn re-delegate to other "Special Assistants" or "Special

[8a] The Act of June 30, 1906, 34 Stat. 816, 5 U.S.C.A. § 310 did not contain any repealer clause. And it being a general statute and the Act of March 2, 1889, 40 U.S.C.A. § 256, being a special statute, the conclusion set forth in Section 975 of the Book of Instructions that the provisions of the Act of March 2, 1889 were mandatory is a logical one, and is consistent with recognized rules of statutory construction.

Attorneys" in the Department of Justice.[9] Accordingly, I conclude that there is no jurisdiction in this matter, and I am without authority and power, and hereby decline to sign the requested judgment for the above reasons.

---

[9] As this memo is in the typewriter there comes by mail another letter from Mr. Brett. The letter from the Attorney General of October 19, 1943, referred to is Footnote 2 hereof. It presents no new fact or phase and does not affect the conclusion herein. It reads as follows:

"Department of Justice
"Lands Division
"808 Federal Building
"Los Angeles 12, California
"December 31, 1943

"Hon. Peirson M. Hall
"United States District Judge
"Federal Building
"Los Angeles 12, California

"My dear Judge Hall:

"Supplementing my recent communication to you, which preceded my trip to San Francisco, I am in receipt of an amended communication from Honorable Francis Biddle, dated October 19, 1943, a photostatic copy of which I have filed with the Clerk of the Court and a photostatic copy of which is enclosed herewith. I particularly direct your attention to the fourth paragraph of the letter, which reads as follows:

" 'Under these circumstances I have delegated to you, and I hereby specifically direct that you exercise, plenary authority to sign and file on behalf of the United States, any and all pleadings, briefs, papers or documents in the District Court in and for the Southern District of California which you may consider necessary or proper for the conduct of such Lands Division cases as have been, or may be in the future, placed and maintained under your supervision by the Department of Justice. Other attorneys and Special Attorneys of the Department of Justice assigned to your office may also appear of record in such proceedings and cases and otherwise participate in the conduct thereof as you may authorize and direct.'

"Pursuant thereto, I am directed by Honorable Norman M. Littell, Assistant Attorney General in charge of the Lands Division, Department of Justice, in part as follows, to wit:

" 'You should stand on the Attorney General's Letter and allege in each complaint filed that the action is brought upon the direction of the Attorney General. Should that allegation be denied, specific proof of your authority to proceed in a specific case could then be filed.'

"You are therefore informed that it is my interpretation of these instructions that I will henceforth allege in each action the fact that I have been authorized and directed to bring the proceeding, by the Attorney General (after, of course, first alleging other jurisdictional facts, such as the findings of necessity and request for acquisition by the appropriate officer of the acquiring agency, and any other specific allegations which arise out of special statutes, such as the Second War Powers Act and the Lanham Act, etc., etc.), and will produce no other proof or evidence of my authority unless such allegations are affirmatively and expressly denied and put in issue.

"I shall continue to execute and have filed in each case the designation of other attorneys assigned to me who are authorized to appear of record and otherwise participate in the conduct of each separate proceeding.

"Respectfully,
"(Signed) Irl D. Brett
Irl D. Brett
"Special Assistant to the
Attorney General."

## MEMORANDUM BY IRL D. BRETT

[Ed. n. Included by the Court without any change in order that viewpoint of Attorney General's office may be shown.]

Memorandum in re authority of Attorney General to give general authorization to Irl D. Brett and Eugene D. Williams, as Special Assistants to the Attorney General, to omit the name of Honorable Charles H. Carr, United States Attorney for the Southern District of California, from all pleadings and documents filed in said District in behalf of the United States for matters within the jurisdiction of, and which are handled by, the Lands Division Field Unit of the Lands Division, Department of Justice, and the effect of such omission upon the jurisdiction of said District Court in such proceedings.

### Facts

Since September 15, 1939, the Lands Division of the Department of Justice has had a field unit located in the Southern District of California, which unit originally consisted of Messrs. Irl D. Brett and Francis C. Whelan, who were appointed as Special Attorneys, Lands Division, Department of Justice, with offices in the suite of the United States Attorney, such field unit being in charge of Mr. Brett. In the spring of 1941,

other Special Attorneys had been added to the unit, and a separate branch office was located in San Diego. In the spring of 1942, Mr. Brett was re-appointed as a Special Assistant to the Attorney General, in charge of the Los Angeles and San Diego field offices, with authority to handle all matters originating in the Lands Division and filed, or to be filed in the District Court for the Southern District of California. His appointment was in writing, over the signature of the Attorney General, and pursuant to the provisions of Section 310 and 315, Title 5, United States Code Annotated, which provisions read as follows:

"§ 310. Conduct of legal proceedings. The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provisions of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought. (June 30, 1906, c. 3935, 34 Stat. 816)."

"§ 315. Appointment and oath of special attorneys or counsel. Every attorney or counselor who is specially retained, under the authority of the Department of Justice, to assist in the trial of any case in which the Government is interested, shall receive a commission from the head of such department, as a special assistant to the Attorney General, or to some one of the district attorneys, or as a special attorney, as the nature of the appointment may require; and shall take the oath required by law to be taken by the district attorneys, and shall be subject to all the liabilities imposed upon them by law. Foreign counsel employed by the Attorney General in special cases shall not be required to take the oath required by this section. (R. S. § 366; Apr. 17, 1930, c. 174, 46 Stat. 170)."

Upon receiving such commission he subscribed the statutory oath, which was filed with the Attorney General.

Mr. Eugene D. Williams was appointed as a Special Assistant to the Attorney General in 1941, originally to cooperate with and assist Mr. Francis B. Critchlow, another Special Assistant to the Attorney General, in connection with the Kettleman Oil Royalty litigation section of the Lands Division, which litigation was and is pending in the above named court. Upon receiving such commission, Mr. Williams subscribed the

statutory oath, which was filed with the Attorney General.

Thereafter, the Los Angeles unit grew to such extent that Mr. Brett now has under him fifteen attorneys and a stenographic and clerical staff of 39 people, as a result of which it became and was necessary for such unit to be physically separated from, and to remove from, the office of the United States Attorney.

In August, 1943, by direction of Hon. Norman M. Littell, Assistant Attorney General in charge of the Lands Division, Mr. Williams was detached from the Oil Royalty litigation and placed in charge of all matters arising out of the Trial Section of the Lands Division, and Mr. Brett remained in charge of all matters arising out of the Condemnation Section, Lands Division. By the term "all matters" is meant all proceedings originating from the Lands Division, Department of Justice, and filed, or to be filed, in the District Court for the Southern District of California.

On August 19, 1943, the Attorney General, over his personal signature, wrote to the United States Attorney at Los Angeles, Hon. Charles H. Carr, as follows:

"Dear Mr. Carr:

"I have considered a recommendation by Assistant Attorney General Littell that the Lands Division work in Southern California, which is now conducted under the supervision of Irl D. Brett, Special Assistant to the Attorney General, be formally separated from your office. I understand that you yourself recommended this course to Mr. Littell in a conference with him at Denver when you were attending the United States Attorney's Conference there.

"This step seems to be in order because of the vastly increased volume of Lands Division work (approximately ten per cent of the condemnation work in the country is in Southern California) and because the work has now been physically removed from your office to other space in the Federal Building.

"Under these circumstances, it would seem to be unnecessary for you to sign pleadings of the Lands Division cases and, unless you have a contrary view, you are authorized to discontinue this practice and refer to the Lands Division staff in Los Angeles all matters relating to Lands Division work.

"Sincerely,

"Attorney General"
."Francis Biddle

And on September 10, 1943, Mr. Carr wrote to Mr. Brett as follows:

"Your attention is invited to a letter from Asst. Attorney General Norman

M. Littell of August 16, 1943, a copy of which was forwarded to you. On page two, second paragraph, Mr. Littell advised that this office would receive instructions pursuant to my conversation with Mr. Littell in Denver concerning the removal of my name from the pleadings of the Lands Division.

"A letter from Attorney General Francis Biddle dated August 19, 1943, advises as follows:

" 'Under these circumstances, it would seem to be unnecessary for you to sign pleadings of the Lands Division cases and, unless you have a contrary view, you are authorized to discontinue this practice and refer to the Lands Division staff in Los Angeles all matters relating to Lands Division work.'

"On August 31st I advised the Attorney General as follows:

" 'Pursuant to your authorization I shall discontinue the practice of signing pleadings in the Lands Division cases.'

"It will be appreciated if you will advise me when my name has been removed from the pleadings filed by the Lands Division."

And on September 11, 1943, Mr. Brett replied as follows:

"Receipt is acknowledged of your two memorandums of September 10th.

"I am notifying my staff of your directions with respect to the use of your library and requiring strict adherence thereto.

"You are informed that my Department ceased including your name as counsel of record on new suits on September 1st. We have followed the practice of including your name on previously filed actions, but in view of the Attorney General's directive and your memorandum, I am now directing my staff to eliminate your typewritten signature on all pleadings as of this date.

"With best regards, I remain"

Subsequent thereto, the Hon. Peirson M. Hall, one of the judges of the above court, questioned the authority of the Attorney General to make such general delegation of authority as is indicated in his communication of August 19, 1943, whereby he confirms Mr. Brett's "supervision" of the Lands Division work in Southern California; authorizes the United States Attorney to discontinue signing pleadings "of the lands Division cases" and to "refer to the Lands Division staff in Los Angeles all matters relating to Lands Division work." Judge Hall has declined to consider application for and to enter orders in connection with matters which have been filed in the name of the United States respecting matters originating out of the Lands Division of the Department of Justice, and in which matters the pleadings or documents presented to the court, or filed in court, follow the directions of the Attorney General and *omit* the signature of the United States Attorney and contain only the signature of Mr. Brett.

We are informed that a similar question has been raised, or may be raised, with respect to recent actions originating out of the Lands Division and filed in the name of Mr. Williams, respecting Indian lands, as well as other matters originating out of said Lands Division from the Trial Section.

We are informed that Judge Hall does not question the right and authority of the Attorney General to specifically designate an attorney, special attorney, or special assistant to prepare, file and thereafter prosecute and carry to completion pleadings and other work respecting a particular, specified case, but that he does question the power of the Attorney General to do so in a blanket or general authorization. We are further informed that he relies substantially upon the provisions of Title 28 U.S. C.A. § 485, which defines the duties of District Attorneys, and which reads as follows: "§ 485. District attorneys; duties. It shall be the duty of every district attorney to prosecute, in his district, all delinquents for crimes and offenses cognizable under the authority of the United States, and all civil actions in which the United States are concerned, and, unless otherwise instructed by the Secretary of the Treasury, to appear in behalf of the defendants in all suits or proceedings pending in his district against collectors, or other officers of the revenue, for any act done by them or for the recovery of any money exacted by or paid to such officers, and by them paid into the Treasury. (R.S. § 771.)", together with certain earlier decisions of the United States Supreme Court and lower Federal courts, to wit, the decision in the Confiscation cases 7 Wall. 454, 74 U.S. 454, 19 L.Ed. 196; United States v. Crosthwaite, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507; United States v. Rosenthal, C.C., 121 F. 862, and United States v. Huston, D.C., 28 F.2d 451.

It is believed that each of these cases is no longer controlling and that the blanket or general authorization of the Attorney General, particularly when it has been concurred in by, and has originated upon the request of, the United States District Attorney, completely authorizes the filing of proceedings by Messrs. Brett and Williams and their control of the proceedings in behalf of the United States; and that the omission of the name of the United States Attorney is, at best, a mere formality,

and that this court has jurisdiction of proceedings in which the pleadings omit his name and are obligated to hear, determine and pass upon applications for orders and all other questions when presented by Messrs. Brett and Williams and their assistants, in like manner and to the same extent as the court would be required to act if such applications were made, or proceedings taken, by or in the name of the United States Attorney, or his assistants.

### I.

"In the absence of citation of authority in support of the contention that this section (Title 5, Section 310, U.S.C. [5 U.S.C.A. § 310]) was unconstitutional, it was the duty of the District Court to uphold the validity thereof." United States v. Atlantic Commission Co., D.C. N.Y.1942, 45 F.Supp. 187, 191.

### II.

"This section confers on Special Assistants to the Attorney General authority *coextensive with that of the District Attorney*, where specifically authorized by the Attorney General." (Italics supplied) United States v. Sheffield Farms Company, D.C.N.Y.1942, 43 F. Supp. 1, 3.

### III.

"This section (Title 5, Section 310 U. S.C. [5 U.S.C.A. § 310]) does not require a specific designation for each particular case. The language of the statute is almost equally open to either interpretation; i. e., that the direction must be for the specific case or for a special kind of proceeding. This being so, the statute should be given the meaning which is the more helpful and practical in the dispatch of the government's business, especially as this meaning has been placed upon it by the Department concerned. *As the Attorney General can unquestionably make case by case designations, to give the statute the narrower interpretation would result only in useless red tape.*" (Italics supplied) United States v. Martins, D.C.Mass., 288 F. 991, 992.

### IV.

"The words 'When thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding' (which are a part of Title 5, Section 310 U.S.C. [5 U.S.C.A. § 310]) are mainly for the protection of the United States and they do not require the naming of the persons or the particular cases to be prosecuted." (Italics and matter enclosed in parenthesis supplied). Shushan v. United States, 5 Cir., 117 F.2d 110, 114, 133 A.L.R. 1040, certiorari denied 313 U.S. 574, 61 S.Ct. 1085, 85 L.

Ed. 1531, rehearing denied 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564.

### V.

"Neither Section 310 or 315 of Title 5, U.S.C. [5 U.S.C.A. §§ 310, 315], limits the number of Special Assistants or Special Attorneys who can appear in behalf of the Attorney General." United States v. Central Supply Association, D. C.Ohio 1941, 37 F.Supp. 890, 892.

### VI.

"It is not necessary that the Attorney General personally sign the commission of Special Assistant to the Attorney General. They may be signed by his lawful assistants." May v. United States, 8 Cir., 236 F. 495, 500.

### VII.

"It is not necessary that their commissions be filed with the court. The Special Assistant to the Attorney General was acting under a valid appointment in writing (5 U.S.C.A. § 310). It was not rendered invalid by the failure to file or record it. The recording of it could have, at best, been but secondary evidence of its existence." Belt v. United States, 5 Cir., 73 F.2d 888, 889.

To the same effect see: Shushan v. United States, 5 Cir., 117 F.2d 110, 114; United States v. Central Supply Association, D.C.Ohio 1941, 37 F.Supp. 890, 892.

### VIII.

In reference to the cases which I am informed are relied upon by Judge Hall, the following pronouncements have been made by the Federal Courts:

"This Act (Title 5, Sections 310 and 316, U.S.C.A.) obviously was passed to obviate the effect of In re Confiscation Cases, 7 Wall. 454, 74 U.S. 454, 19 L. Ed. 196; United States v. Crosthwaite, 168 U.S. 375, 18 S.Ct. 107, 42 L.Ed. 507, and United States v. Rosenthal, C.C., 121 F. 862 and they are not controlling here." United States v. Atlantic Commission Company, D.C.N.Y.1942, 45 F. Supp. 187, 191.

"This Act (Title 5, Sections 310 and 315, U.S.C.A.) superseded the holding in United States v. Huston, D.C., 28 F.2d 451." United States v. Central Supply Association, D.C.Ohio, 1941, 37 F.Supp. 890, 892.

"This Act (Title 5, Sections 310 and 315, U.S.C.A.) was passed to overcome the decision in United States v. Rosenthal, C.C., 121 F. 862." United States v. Sheffield Farms Co., D.C.N.Y.1942, 43 F.Supp. 1, 3.

### IX.

"Furthermore the omission of the signature of the United States Attorney is

a mere formality and is not jurisdictional." United States v. Sheffield Farms Co., D.C.N.Y.1942, 43 F.Supp. 1, 3; United States v. Atlantic Commission Co., D.C.N.Y.1942, 45 F.Supp. 187, 192.

It is, therefore, respectfully submitted that the older cases holding that Title 28, Section 485, requires that all proceedings in behalf of the United States be conducted by the United States Attorney, otherwise the court does not have jurisdiction, have been superseded by the Acts of Congress which created Title 5, Section 310 and 316, U.S.C.A., and are no longer controlling. That Messrs. Brett and Williams, having been appointed in writing, having subscribed to their oath of office and entered upon their duties, and having been specifically designated as counsel in charge of Lands Division matters in the District Court for the Southern District of California, have, in pursuance of their duties, authority coextensive with that of the United States Attorney. That since the Attorney General has the power and authority to make separate, specific designations, he likewise has the authority, to make the general designation whereby he has authorized omission of the name of the United States Attorney, and dele-

gated authority and supervision over all Lands Division cases to Messrs. Brett and Williams, and that the subsequent directive of one of his Assistant Attorneys General, Norman M. Littell, as Assistant in charge of Lands Division matters, dividing the work between Mr. Brett and Mr. Williams as hereinabove set forth, is valid in all respects. That this Honorable Court has jurisdiction of all matters filed in the name of the United States, pursuant to the directions of the Attorney General, in which the papers and pleadings are solely in the names of Messrs. Brett and Williams, and the name of the United States Attorney is omitted therefrom, and that their activities are to be treated and considered by the Honorable, the Judges of this Court, in like manner and to the same extent as if such activities were conducted by the United States Attorney and his assistants.

Dated: October 7, 1943.

Respectfully submitted,

Irl D. Brett
Irl D. Brett
Office of the Attorney General
Washington, D. C. (25)
October 19, 1943
(Seal of the Department of Justice)