UNITED STATES v. ROSENTHAL et al. (three cases).

(Circuit Court, S. D. New York. March 17, 1903.)

1. GRAND JURY—PROCEDURE—APPEARANCE OF GOVERNMENT COUNSEL.
   The Attorney General, the Solicitor General, nor any officer of the Department of Justice, is authorized by sections 359, 367, or other provision of the Revised Statutes of the United States [U. S. Comp. St. 1901, pp. 207, 209], to conduct, or to aid in the conduct of, proceedings before a grand jury, nor has a special assistant to the Attorney General such power.

2. SAME—DEPARTMENT OF JUSTICE.
   A special assistant to the Attorney General is not an officer of the Department of Justice, within the meaning of such sections.

**3. SAME—QUASHING INDICTMENT.**

A special assistant to the Attorney General, appointed to investigate and report concerning alleged fraudulent importations of Japanese silks at the port of New York, and to prepare and conduct such civil and criminal proceedings as may result therefrom, is not authorized by law to conduct, or to aid the conduct of, proceedings before a federal grand jury, and indictments based upon such proceedings so conducted should be quashed upon motion.

**4. SAME—ASSISTANT ATTORNEY GENERAL—COMPENSATION.**

The Merchants' Association of the City of New York assured the Attorney General that, if necessary, it would furnish funds to compensate the special assistant who should be appointed for such purpose. This arrangement was inter alios, and did not disqualify the appointee, who became an employé of the United States, to whom alone he could look for compensation, and for whom he performed his duty with fidelity and probity.

(Syllabus by the Court.)

Henry L. Burnett, U. S. Atty., and W. Wickham Smith, Special Asst. Atty. Gen.

Dittenhoefer, Gerber & James (A. J. Dittenhoefer and Frank H. Platt, of counsel), for defendants Rosenthal and Cohn.

Judson G. Wells, for defendant Browne.

THOMAS, District Judge. On January 9, 1902, the Attorney General issued to W. Wickham Smith, the following commission:

"Sir: You are hereby appointed a Special Assistant to the Attorney General to investigate and report concerning alleged fraudulent importations of Japanese silks at the port of New York and to prepare and conduct such civil and criminal proceedings as may result therefrom.

"Your compensation will be determined by the Attorney General on the completion of your services. This appointment is made subject to any change which may be made by the Department.

"Execute the customary oath of office and forward the same to this Department."

In the previous December the Merchants' Association of the City of New York asked Mr. Smith, after examination, to determine whether there was reasonable ground for reopening a former inquiry concerning such importations. Mr. Smith, after an interview with Mr. Wakeman, appraiser, reported that there should be a thorough investigation, and suggested that the proper federal officer should designate "some competent and suitable person familiar with customs law to make a thorough investigation of this matter, and that the person so designated shall be permitted to have access to all official documents relating to the subject on file in any office or department of the government." Thereupon the Merchants' Association, by letter, conveyed Mr. Smith's suggestions to the President, with whom, as well as with the Attorney General, two officers of the association later conferred. Thereupon Mr. Dresser, the president of the association, and Mr. Mead, its secretary, or one of them, informed Mr. Smith "that the Attorney General was in favor of an investigation, but had suggested to them that the appropriation out of which he obtained funds for the employment of special counsel

¶ 3. See Indictment and Information, vol. 27, Cent. Dig. § 484.

was exhausted, and that he had at that time no money available for the purpose; that they had thereupon stated to the Attorney General that, if he thought the matter was one requiring investigation, and would appoint some competent and suitable officer for that purpose, they would be responsible for his fees in case the Attorney General was unable to pay him; * * * that they had not suggested to the Attorney General the appointment of any particular person for this purpose," but that Mr. Smith's name had been suggested by one of the Attorney General's assistants, and also by the Secretary of the Treasury. There is no reason for doubting the accuracy of this statement as it appears by Mr. Smith's affidavit, nor is it important that the Merchants' Association, in its official organ or otherwise, appropriated the credit for his selection. Mr. Smith was neither a member of its board, nor was he ever its general counsel, although he states that on two or three different occasions since 1897 "they have consulted or retained me in special matters relating to the revenue laws, and they paid me for my services. The last work I performed for the Merchants' Association was in the spring of the year 1900, and they paid me by a check dated March 13, 1900, and I have never since been retained in any matter by them, nor received any money from them. I did not enter into any contract or arrangement with the Merchants' Association of New York with regard to my services in these silk fraud cases. Whatever arrangement they made was with the Attorney General of the United States, before I was even invited to take part in the cases. I have never asked the Merchants' Association, or any of its officers, for any compensation in these cases, or for any stipulation or undertaking as to the payment of compensation. They have never offered me any compensation. I have never received a dollar for the services already performed, which extend over a period of a year, either from that association or from anybody else, and have not even been reimbursed for amounts actually laid out by me for traveling and other expenses. I have never even received any communication, formal or informal, oral or written, with reference to compensation for my services in these cases from the Merchants' Association since the conversation already narrated, when they reported to me their interview with the Attorney General. * * * There has never been a time from the execution of this commission until the present moment when I have ever considered myself as the attorney for the Merchants' Association. There has never been a time when they have in any way assumed to me to be my employers or clients. I have never at any time consulted them as to any course that I should pursue. I have never at any time communicated to them (except so far as I have communicated it to the general public) the details of the results of my investigation. I have not seen the president of the Merchants' Association a half a dozen times during the past twelve months, and its secretary perhaps as often. There is absolutely no foundation whatever for the assertion or insinuation that I have ever at any time represented them in this matter, or that they have asked me to represent them, or have sought in any way to influence my conduct or ascertain my plans."

The evidence produced upon these motions fully sustains the statement made by Mr. Smith. The association undoubtedly expects to pay for his services, and will probably do so, pursuant to its promise to the Attorney General. It is natural that Mr. Smith should recognize these probabilities, and with candor express himself accordingly, if there were occasion. But he was in no wise responsible for the arrangement. It placed him under no obligation to the Merchants' Association, inasmuch as the government alone retained him, and is liable to make proper compensation for his authorized services. His relation to the matter is highly honorable, and independent, as becomes an attorney of this court, employed by the United States as its sworn official.

The next question is, what authority did the appointment vest in Mr. Smith? After receiving the appointment and duly qualifying, Mr. Smith pursued vigorously and fairly the investigation of the alleged offenses, and with the sanction and co-operation of the District Attorney appeared before the grand jury, and chiefly conducted the proceedings that resulted in the indictments, whose validity is now accused on account of Mr. Smith's action with reference to them. Should the indictments be quashed? A survey of the powers of the District Attorney and the Attorney General and his authorized officers and assistants is necessary. The Revised Statutes provide: "There shall be appointed in each district * * * a person learned in the law, to act as attorney for the United States in such district" (section 767 [U. S. Comp. St. 1901, p. 599]); and "it shall be the duty of every district attorney to prosecute, in his district, all delinquents for crimes and offenses cognizable under the authority of the United States" (section 771 [U. S. Comp. St. 1901, p. 601]). But the Attorney General is the head of the Department of Justice (section 346 [U. S. Comp. St. 1901, p. 202]), the legal adviser of the President (section 354 [U. S. Comp. St. 1901, p. 206]), and to him the officers of the other departments of the government may resort for legal advice (section 356 [U. S. Comp. St. 1901, p. 206]). During almost a century of the government the Attorney General was, as he remains, a member of the Cabinet, the law officer to the President and the Executive Departments, and in 1861 he was given supervisory powers respecting the officers connected with the courts throughout the federal domain; but his own participation in litigation was confined to the conduct of cases in the Supreme Court (Act Sept. 24, 1789, c. 20, § 35; 1 Stat. 92), until it was extended to the Court of Claims (Act June 25, 1868, c. 71, § 5; 15 Stat. 75). To understand the legislation of 1870, to which attention will soon be called, this original conception of what the Attorney General was, and what he and his officers were empowered to do, is important. So far as local judicial procedure in the various districts was concerned, they had no power to represent the government. In that regard the District Attorney had exclusive authority. The wide difference in the powers of district attorneys and the Attorney General was stated, in 1868, in the Confiscation Cases, 7 Wall. 457, 19 L. Ed. 196, where Mr. Justice Clifford said:

121 F.—55

"Public prosecutions, until they come before the court to which they are returnable, are within the exclusive direction of the District Attorney, and even after they are entered in court they are so far under his control that he may enter a nolle prosequi at any time before the jury is impaneled for the trial of the case, except in cases where it is otherwise provided in some act of Congress. * * * Settled rule is that those courts will not recognize any suit, civil or criminal, as regularly before them, if prosecuted in the name and for the benefit of the United States, unless the same is represented by the District Attorney, or some one designated by him to attend to such business, in his absence, as may appertain to the duties of his office."

Here the inability of the Attorney General or other official to represent the United States in criminal prosecutions was recognized and pronounced, and the words "public prosecutions, until they come before the court to which they are returnable, are within the exclusive direction of the district attorney," embodied a fundamental policy of the government. This decision was rendered in December, 1868, and in 1870 Congress enacted a provision, which in 1875 appeared in the Revised Statutes as section 369 [U. S. Comp. St. 1901, p. 207] :

"Except when the Attorney General in particular cases otherwise directs, the Attorney General and Solicitor General shall conduct and argue suits and writs of error and appeals in the Supreme Court (Act Sept. 24, 1789, c. 20, § 35; 1 Stat. 92), and suits in the Court of Claims in which the United States is interested (Act June 25, 1868, c. 71, § 5; 15 Stat. 75), and the Attorney General may, whenever he deems it 'for the interest of the United States, either in person conduct and argue any case in any court of the United States in which the United States is interested, or may direct the Solicitor General or any officer of the Department of Justice to do so (Act June 22, 1870, c. 150, § 5; 16 Stat. 162)."

But is this ability given to the Attorney General and his officers to "conduct and argue any case in any court" in derogation of the exclusive power of the District Attorney to initiate proceedings before the grand jury? In Counselman v. Hitchcock, 142 U. S. 547, 563, 12 Sup. Ct. 195, 35 L. Ed. 1110,' it was held that a proceeding before a grand jury was a "criminal case" within the meaning of the constitutional provision that a person shall not be "compelled in any criminal case to be a witness against himself." But the intention, scope, and protection contemplated by the constitutional provision governed the conclusion, rather than the technical meaning of the word. The word "case" usually conveys the idea of a controversy or issue already before the court, and not a preliminary proceeding before a magistrate, commissioner, or grand jury. It is with difficulty believed that it was the intention of Congress to endow the highest law officer of the United States and the Solicitor General and the officers of the Department of Justice with power to "conduct and argue" a case before a grand jury. It is probable that the intention was to settle the right of these officers to "conduct and argue" cases "in any court," as they had been permitted to do in the Supreme Court and the Court of Claims, and to leave "public prosecutions, until they come before the court to which they are returnable, * * * within the exclusive direction of the District Attorney," as theretofore declared. But, unless this section give the power, there is no law that enables, unless it be that of June 22,

1870 (chapter 150, § 5; 16 Stat. 162), which was in 1875 embodied in section 367, Rev. St. [U. S. Comp. St. 1901, p. 209], as follows:

"The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any state or district in the United States to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any state, or to attend to any other interest of the United States."

But this provision, enacted at the same time as section 359, was to enable the Attorney General to send the Solicitor General or other officer of the Department of Justice to any state or district to attend to any interests of the United States "in any suit pending" in a federal or state court. It should be observed that by section 359 the Attorney General and such officers may not "conduct and argue any case" in a state court. Section 367 gives that power. After the definite exclusion of the Attorney General from prosecutions before they were returnable, as stated in the Confiscation Cases, it is improbable that Congress, if it intended to confer that power by the acts of 1870 and 1875 (section 367), should have spoken definitely of a "suit pending." Of course, those words exclude proceedings before a grand jury, and indicate attentive and jealous regard for the primary policy of limiting the conduct of matters before grand juries to the local officers. It is urged that the final clause, "or to attend to any other interest of the United States," in section 367, was intended to permit the officers named to appear before the grand jury. But a section that in its earlier clause so precisely limits the power to "any suit pending" would hardly end by including a proceeding which is not a "suit pending," but an investigation initiatory of such suit. Considering the recognized committal of proceedings before grand juries to the exclusive conduct of district attorneys, and that in augmenting the power of the Attorney General and officers there are used words whose obvious meaning would exclude them from proceedings before grand juries, it may be concluded that Congress, by the last clause now appearing in section 367, did not intend to confer that power. This view is strengthened by the consideration that by a section of the same act in 1870 (chapter 150, § 17; 16 Stat. 164), now section 366, Rev. St. [U. S. Comp. St. 1901, p. 209], there is a recognition of the Attorney General's power, not elsewhere stated, to appoint a "special assistant to the Attorney General," "to assist in the trial of any case." Here again is a careful limitation that would exclude the power to conduct proceedings before the grand jury. Such persistent use of terms cannot be deemed inaccurate or accidental.

But a special assistant to the Attorney General is not an "officer" within the meaning of sections 359 or 367. Officers in the Department of Justice are enumerated in sections 348 and 349 [U. S. Comp. St. 1901, pp. 202, 203], and may be appointed only by the President, by and with the advice and consent of the Senate; and section 350 [U. S. Comp. St. 1901, p. 204], provides:

"The officers named in the preceding section shall exercise their functions under the supervision and control of the head of the Department of Justice."

· The power of the Attorney General to direct the services of such officers is the subject of sections 358, 359, 360, 361 [U. S. Comp. St. 1901, p. 207], and, finally, 367. Surely, a special assistant to the Attorney General is not such officer.

But by what authority is a special assistant to the Attorney General appointed? Counsel refer only to section 366 as mentioning a "special assistant to the Attorney General":

"Every attorney or counselor who is specially retained, under the authority of the Department of Justice, to assist in the trial of any case in which the government is interested, shall receive a commission from the head of such department, as a special assistant to the Attorney General, or to some one of the district attorneys, as the nature of the appointment may require; and shall take the oath required by law to be taken by the district attorneys, and shall be subject to all the liabilities imposed upon them by law."

This section simply recognizes the contemplated special retainer of an attorney or counselor "to assist in the trial of any case in which the government is interested," and directs concerning his commission, oath, and liabilities. If this section enable the Attorney General to appoint a special assistant to the Attorney General, it limits the appointee's power "to assist in the trial of any case." Of course, the trial of a case would not include proceedings before the grand jury. Section 365 [U. S. Comp. St. 1901, p. 209] provides:

"No compensation shall hereafter be allowed to any person, besides the respective district attorneys and assistant district attorneys for services as an attorney or counselor to the United States, or to any branch or department of the government thereof, except in cases specially authorized by law, and then only on the certificate of the Attorney General that such services were actually rendered, and that the same could not be performed by the Attorney General, or Solicitor General, or the officers of the Department of Justice, or by the District Attorneys."

This section indicates that attorneys cannot be designated for service to the government "except in cases specially provided by law." Assuming that the Attorney General may employ and commission a special assistant to himself "to assist in the trial of any case," what special provision of law authorizes his employment for any other purpose, or more explicitly for the purpose of conducting proceedings before a grand jury? The government should, if the power exist, be able to point to it. Section 366 alone is indicated, and that section definitely excludes the appointee from the grand jury. But the government refers to section 363 [U. S. Comp. St. 1901, p. 208] for the necessary authority:

"The Attorney General shall, whenever in his opinion the public interest requires it, employ and retain, in the name of the United States, such attorneys and counselors at law as he may think necessary to assist the district attorneys in the discharge of their duties, and shall stipulate with such assistant attorneys and counsel the amount of compensation, and shall have supervision of their conduct and proceedings."

This section provides for the appointment of an attorney to assist a district attorney, and, if this section be read in connection with section 366, the assistance contemplated is "in the trial of any case." Moreover, under section 366, a commission should issue to the appointee under section · 363 as an assistant to the District Attorney,

if such be the nature of his appointment. In the case at bar Mr. Smith is appointed as a special assistant to the Attorney General, but it is urged that this title is not inconsistent with his appointment under section 363. It is not understood that under a statute providing for "assistant attorneys" to assist the District Attorney a person may be appointed under the style of a "special assistant to the Attorney General." Such person is appointed obviously to assist the Attorney General, and not to assist the District Attorney. By what logic can it be enforced that the assistant to the Attorney General may be endowed with a power denied to the chief officer himself? Powers that are nonexistent cannot be delegated by a superior to an inferior. A principal conveys to his agent what he has, and not what is denied him, and what he has not.

But neither the instrument of appointment nor any extrinsic fact suggests that Mr. Smith was appointed to assist the District Attorney, or to have any official relation to him. His power was intended to be concurrent with, or supplementary to, that of the District Attorney. He was appointed, without any official reference to the District Attorney, to be an assistant to the Attorney General, and to take charge of civil and criminal proceedings respecting a certain class of importations at the port of New York. Nothing, either in the form or contents of the instrument of appointment, or the history that preceded it, indicates that the appointment was under section 363. The appointee is in precise terms made an assistant to the Attorney General, and in no way related to the District Attorney, either as an associate or subordinate. To hold that the appointment was made under section 363 would be a misrepresentation of both the facts and the law.

The government urges that Mr. Smith was a de facto officer, and that the defendants cannot raise the objection that he was not an officer de jure entitled to conduct the proceedings. The difficulty is that the office which Mr. Smith assumed to fill did not authorize his presence before the grand jury. Had he gained unwarranted possession of the office of a district attorney, and as such conducted proceedings before the grand jury, he would have been a de facto district attorney. But he was de jure a special assistant to the Attorney General, and as such assumed to conduct the proceedings. This did not make him a district attorney de facto. He was not serving under any false title, nor had he usurped anybody's office. He was assuming, as an officer recognized by the law, to exercise powers conferred upon another officer. When there is a legal office, the title of the person actually filling it cannot be disputed in many instances by persons falling under the control of the de facto officer. Those defendants may not dispute that Mr. Smith was a special assistant to the Attorney General, but may assert that he, as such, was not authorized to conduct proceedings before the grand jury. If the marshal, as such, assumed to conduct proceedings before a grand jury, it would not transform him into a de facto district attorney. Persons tried in a legal court may not challenge the right of a person who assumes to act as judge, but, to render such officer's proceedings valid, he must assume to be the judge, and act as such.

But what harm was done to the defendants? There is no evi-
dence of any harm from actual misconduct, for Mr. Smith has
requisite capacity and irreproachable character, which was illustrated
in the conduct of these proceedings. But is the act per se harmful?
In United States v. Reed, 2 Blatchf. 435, 456, Fed. Cas. No. 16,134,
Judge Nelson passed upon the validity of an indictment based upon
a proceeding where the son and clerk of the district attorney was
present before the grand jury "to aid in bringing out the testimony."
The learned judge said:

"The only point that can arise on this branch of the case is whether the
person admitted to the grand jury was guilty of any improper conduct while
there which operated unduly on the minds of the jurors."

The refusal to set aside the indictments was based upon the ground
that it was the uniform practice in the court for the clerk and assist-
ant of the District Attorney "to attend the grand jury, and assist
in investigating the accusations presented before it." So, in State
v. Brewster, 70 Vt. 341, 40 Atl. 1037, 42 L. R. A. 444, the indictment
was sustained although a stenographer recorded the proceedings of
the grand jury.

The further case in this circuit is that of United States v. Farring-
ton, 5 Fed. 343, where the indictment was quashed by the District
Court. It is stated in the opinion that the indictments were not pre-
pared by the law officers of the government, but an attorney who
was presumed to represent creditors of the banks, the embezzlement
of whose money was the basis of the charge. This attorney had
instituted proceedings before a commissioner against certain of the
defendants, and appeared as a witness before the grand jury, with a
number of bank books, with various exhibits, originals and copies,
and read from these such selections as he chose, as well as from
the minutes of testimony taken by the commissioner, and his own
testimony was interspersed with comments upon the force and ef-
fect of the testimony, entries, and exhibits in the nature of argument,
which was, in the language of the District Attorney, "animated,
spirited, and excited." The District Attorney advised the jury that
certain of the evidence offered by the attorney was incompetent. The
learned judge said:

"This summary of the proceedings before the grand jury is sufficient to
indicate that they were such as to seriously endanger, if not to preclude, an
intelligent and fair consideration of the charges preferred against the ac-
cused."

And again:

"It is patent that the grand jury permitted themselves to be influenced by
the appeals and arguments of a zealous advocate, by hearsay testimony, and
by testimony which the law prohibits, although they were advised to the
contrary by the District Attorney; and it seems much more probable that
they were led to their conclusions by prejudice and undue zeal than by calm
and fair deliberation. If there was evidence which authorized an indictment,
it was so blended with and obscured by the mass of hearsay and otherwise
incompetent testimony that it was impossible for the jury to distinguish it."

The motions to quash the indictments were granted upon the
grounds suggested by the quotations from the opinion, but did not

proceed upon the ground that an unauthorized person had appeared before the grand jury in the capacity of public prosecutor. Indeed, it is doubtful whether he so appeared. He entered the jury room under the guise of a witness, abused his function as a witness, and seized the opportunity to make comments that did not pertain to his character as a witness. The case would seem to have very little bearing upon the question now at bar, but is of much importance with reference to the misconduct of any person before a grand jury and the duty of the court respecting the same.

In United States v. Kilpatrick (D. C.) 16 Fed. 765, 774, Mr. Bowman, an examiner of the Department of Justice, was before the grand jury, and the court found:

"That Mr. Bowman was introduced to the grand jury by the District Attorney or his assistant; that he remained in the room during the examination of many of the witnesses; that, at the request of some member of that body, he assisted them in their investigations by explaining accounts while the witnesses were on examination, and he asked some questions; that he directed the inquiries of the grand jury, at the request of some member, by telling them what certain witnesses would testify before they were introduced into the room; that he did not regard himself as a prosecutor, but simply a witness, at the command of the jury, and in duty bound to obey them; and that he left the room before any ballot was taken."

The presiding judge stated that such examiner

"Certainly cannot enter the grand jury room, and assist that body in their investigations. The District Attorney exercises that privilege only by the express permission of the court, and I am inclined to the opinion that the court could not legally confer such high authority upon an examiner of the Department of Justice."

The indictment was quashed apparently on account of the presence of Mr. Bowman before the grand jury, and also on account of illegal evidence given by him. The views of the learned judge concerning the right of even the District Attorney to appear before the grand jury without the consent of the court are very pronounced, and are emphasized as regards the unauthorized action of the examiner. It should be observed that Mr. Bowman was a mere witness, and unduly interfered with the investigation.

In United States v. Edgerton, 80 Fed. 374, the District Court decided that, where an expert witness remained in the jury room while another witness was being examined, and put questions to him, the indictment should be quashed. The opinion states:

"It is beyond question that no person, other than a witness undergoing examination, and the attorneys for the government, can be present during the sessions of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. The cases where bailiffs and stenographers have on occasions been temporarily present in the grand jury room are only apparent exceptions. The rule, in its spirit and purpose, admits of no exception. In the present case it is suggested that the only testimony heard while the expert Flynn was present related to the production of certain books of account, touching which the expert interrogated the witness who was testifying as to his·possession of such books or other documents, and this could not have prejudiced the defendant. The court cannot know that this suggestion represents the fact. The case as presented is one which an expert was not only present in the grand jury room while a witness was testifying, but took part in the investigation by interrogating the witness. The court cannot inquire as to the effect of this con-

duct. There must not only be no improper influence or suggestion in the grand jury room, but, as suggested in Lewis v. Commissioners, 74 N. C. 194, there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury?"

Upon the grounds stated, and other grounds, the indictments were quashed. The rule stated in the Edgerton Case would condemn the present indictments.

It has been decided often that an attorney may aid the District Attorney upon the trial of an indictment (State v. Bartlett, 55 Me. 200, 226 [the objection was "that he does and is to receive pecuniary reward from some parties for such services"]; Burkhard v. State, 18 Tex. App. 599; Commonwealth v. Knapp, 10 Pick. 478, 20 Am. Dec. 534), even when he receives his compensation from private sources (Gardiner v. State [N. J. Sup.] 26 Atl. 30; Keyes v. State [Ind. Sup.] 23 N. E. 1097; State v. Helm [Iowa] 61 N. W. 246; State v. Fitzgerald, 49 Iowa, 260, 31 Am. Rep. 148; Benningfield v. Commonwealth [Ky.] 17 S. W. 271; United States v. Hanway, 2 Wall. Jr. 139, Fed. Cas. No. 15,299; Lawrence v. State, 50 Wis. 507, 7 N. W. 343). Decisions to the contrary are Biemel v. State, 71 Wis. 444, 37 N. W. 244; People v. Hurst, 41 Mich. 328, 1 N. W. 1027; Sneed v. People, 38 Mich. 248. So it has been concluded that a person other than the District Attorney could, without invalidating the indictment, take part in the proceedings before the grand jury. Bennett v. State, 62 Ark. 520, 36 S. W. 947; State v. Justus, 11 Or. 178, 8 Pac. 337, 50 Am. Rep. 470 (in this case the objection was not raised on the trial, and this omission influenced the decision on appeal, but the appearance was condemned as "highly improper"); State v. Whitney, 7 Or. 385; State v. Fertig (Iowa) 67 N. W. 87 (there was failure to show that the attorney was not acting as an authorized deputy of the county attorney pursuant to the statute). Decisions to the contrary are People v. Scannell, 36 Misc. Rep. 40, 72 N. Y. Supp. 449; State v. Addison, 2 S. C. 356; Durr v. State, 53 Miss. 425 (the objection was overruled, as it was held that it should be raised by plea); and the indictment was sustained even when the attorney received his compensation from private sources (Wilson v. State [Tex. Cr. App.] 51 S. W. 916). But there was a different ruling in Wilson v. State, 70 Miss. 595, 13 South. 225, 35 Am. St. Rep. 664; State v. Kent, 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686; Commonwealth v. Gibbs, 4 Gray, 146. None of the cases entirely meets the present facts. Here a federal officer was armed with a commission sufficiently broad in its terms to enable him to initiate and conduct proceedings before the grand jury respecting all fraudulent importations of Japanese silks at the port of New York. The District Attorney credited his apparent authority, and co-operated with him, and thereupon the special assistant to the Attorney General became in fact the chief officer in the conduct of the investigation before the grand jury, presumably doing, as regards the presentation of facts and the giving of legal advice, what the District Attorney could do, pursuant to the rules obtaining in

this district. To the extent stated, the functions of the District Attorney passed from the officer from whom the law exacted the duty to the special assistant to the Attorney General, who had no power to perform it. Section 1025 of the Revised Statutes [U. S. Comp. St. 1901, p. 720] providing that "no indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant"—has been held to be applicable to improper or irregular action of persons before the grand jury. United States v. Molloy (C. C.) 31 Fed. 19, 23; United States v. Terry (D. C.) 39 Fed. 355, 361.

It may be within the discretion or power of the court to sustain an indictment based upon an investigation before the grand jury in which an attorney or person other than the District Attorney has participated, yet the most eminent discretion may fail in a wise disposition of such improprieties, and should be exercised to sustain indictments sparingly and with extreme caution. Whatever harm, aside from that flowing from actual misconduct, that may attend such circumstance, is here present, and additional presumption of harm arises from the fact that the District Attorney, as to a general, and perhaps a large, class of offenders, surrendered practically his powers and duties to an entirely distinct federal officer, who not only had no power to perform such duties, but to whom the power for 100 years had been denied by the settled policy of the government, distinctly enunciated by the Supreme Court of the United States. The question is not narrowed to the mere appearance of an unauthorized person in the grand jury room for a limited participation in the proceedings, but is enlarged to a comprehensive transfer of authority from the local law officer of the community to the central law officers of the government, in whom such authority has never been reposed. This exceptional departure from the statutory allotment of power should not be disregarded, although there has been no purpose to transcend the terms and spirit of the statute, and no direct evil consequence can be detected in this particular instance. There is vice in the vicissitude itself whereby the unauthorized prosecutor virtually supersedes the authorized prosecutor. The worth and efficiency of Mr. Smith's service is recognized, but no man's excellence justifies his substitution for the stated public official. Every citizen is amenable to the secret inquisition of the grand jury, and he may demand justly that his essential rights be guarded by the wholesome preservation of settled systems and policies, that give greater certainty to legal proceedings, and fix on the designated prosecuting officer of the locality inevitable accountability for what is done or omitted. The inconvenience of resubmitting the matter to the grand jury is temporary; the injustice of denying the defendants investigation pursuant to the law of the land would be perpetual. It is provident also that the present inattention to the statutory demarcation of duties be corrected at this early stage of the prosecution, lest, after possible years of litigation, when perchance the statute of limitations

shall have run against the actions, it should be decided that there was error in the initiation of the proceedings. The indictments are not faulty, save for the single .reason that they are based upon proceedings in great part conducted without authority by the special assistant to the Attorney General, and on that sole ground the motions to quash are. granted.