**UNITED STATES of America, Plaintiff,**

v.

**James Robert HAWTHORNE et al., Defendants.**

**Crim. No. 77–395.**

United States District Court,
S. D. California,
Fourth Division.

April 18, 1978.

Richard D. Huffman, James L. Duchnick, San Diego, Cal., Ronald H. Rose, Los Angeles, Cal., for plaintiff.

Charles B. McKesson, Tom G. Kontos, Arthur J. Lewis, Richard Cabellero, Los Angeles, Cal., Joseph A. Milchen, San Diego, Cal., Irving D. Apple, Los Angeles, Cal., Leslie E. Osborne, Jr., San Diego, Cal., for defendants.

## AMENDED OPINION

GORDON THOMPSON, Jr., District Judge.

Defendants moved for dismissal of the indictment against them on the ground that James L. Duchnick and Richard D. Huffman, special assistants to the United States Attorney who appeared before the grand jury, were not properly authorized to do so under 28 U.S.C. § 515. The defendants contended that the letters from the Attorney General, which appointed these attorneys as special assistants to the United States Attorney,[1] did not specifically direct

---

1. Duchnick and Huffman were appointed as special assistants to the United States Attorney by Harold Tyler, Deputy Attorney General of the United States, pursuant to the Deputy Attorney General's power to do so under 28 C.F.R. § 0.15(3)(ii). The letters received by Duchnick and Huffman read as follows:

June 8, 1976

Mr. James L. Duchnick
c/o Terry J. Knoepp
United States Attorney
San Diego, California

Dear Mr. Duchnick:

As an attorney, you have been appointed as Special Assistant to the United States Attorney for the Southern District of California.

You have been appointed for a period of one year. This appointment expires on June 30,

1977. It is understood that you will serve without compensation other than that which you are now receiving under your existing appointment with the State of California.

Please execute the required oath of office at your earliest convenience.

Sincerely,
Harold R. Tyler, Jr.

December 9, 1976

Mr. Richard D. Huffman
c/o Mr. Terry J. Knoepp
United States Attorney
San Diego, California

Dear Mr. Huffman:

As an attorney, you have been appointed as Special Assistant to the United States Attorney for the Southern District of California.

You have been appointed for a period of one year. This appointment expires on December

them to conduct grand jury proceedings, as 28 U.S.C. § 515 requires.[2] The government, in opposing the motion, argued that Duchnick and Huffman were properly authorized to appear before the grand jury pursuant to 28 U.S.C. § 515. Finding that these attorneys had not been specifically directed to conduct grand jury proceedings by the Attorney General, as required by § 515, the court ordered that the indictments be dismissed.

The court subsequently granted a government motion for reconsideration of its ruling, and stayed execution of its order to dismiss pending determination of the motion to reconsider. The government now opposes defendants' motions on the grounds that Duchnick and Huffman were authorized as special assistants to the United States Attorney pursuant to 28 U.S.C. § 543 rather than 28 U.S.C. § 515.[3] The appearance of these attorneys before the grand jury was proper, it is asserted, because § 543 does not require that attorneys appointed pursuant to its provisions be specifically directed by the Attorney General to conduct grand jury proceedings.

In response, the defendants argue that § 543 is merely an enabling statute which permits the Attorney General to appoint special assistants to the United States Attorney. Section 543 is not, defendants contend, an independent basis for appointing attorneys to assist the United States Attorney. Rather, § 515 provides the means for the power granted by § 543 to be exercised. Thus, the conduct of specially appointed assistants to a United States Attorney in appearing before a grand jury is not proper unless their authorizations meet the requirements of § 515.

The language of §§ 515 and 543 is ambiguous as to when attorneys, who receive special appointments by the Attorney General, may conduct grand jury proceedings without being specifically directed by him to do so. Section 543 empowers the Attorney General to appoint "attorneys to assist United States attorneys," and does not require that such attorneys receive specific directions from the Attorney General to appear before a grand jury. On the other hand, § 515, which applies, *inter alia,* to "any attorney specially appointed by the Attorney General under law," permits officers of the Department of Justice, and attorneys specially appointed by the Attorney General, to conduct grand jury proceedings only when the Attorney General specifically directs them to do so.

The question confronted, therefore, is whether the specific direction requirement

31, 1977. It is understood that you will serve without compensation other than that which you are now receiving under your existing appointment with the state of California.
  Please execute the required oath of office at your earliest convenience.
    Sincerely,
    Harold R. Tyler, Jr.

2. 28 U.S.C. § 515 provides:
  (a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.
  (b) Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath. The Attorney General shall fix the annual salary of a special assistant or special attorney at not more than $12,000.

3. 28 U.S.C. § 543 provides:
  (a) The Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires.
  (b) Each attorney appointed under this section is subject to removal by the Attorney General.
  It is to be noted that, in its original opposition to the defendants' motion, the government did not suggest that Duchnick and Huffman had been authorized as special assistants to the United States Attorney pursuant to 28 U.S.C. § 543.

of § 515 applies to attorneys appointed by the Attorney General to assist the United States Attorney, since such attorneys are, after all, "attorneys specially appointed by the Attorney General under law." The answer to this question may be found by reference to the circumstances which surrounded the enactment of § 543 and § 515, and historical distinctions between the duties and functions of the Attorney General and the United States attorneys.

## II

The Judiciary Act of 1789 provided for the appointment of an Attorney General for the United States. The Attorney General was authorized by this statute to give "advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments." Additionally, the Attorney General was given the duty to conduct litigation on behalf of the United States in the Supreme Court. Judiciary Act of 1789, § 35, 1 Stat. 93.

The Act also provided for the appointment of district attorneys for the United States (known today as United States attorneys and hereinafter referred to as such) in each judicial district. The power to conduct all criminal and civil litigation in the district and circuit courts, to which the United States was a party, was given to the United States attorneys. Judiciary Act of 1789, § 35, 1 Stat. 93.

Thus the Judiciary Act of 1789 created a system in which the Attorney General was specifically authorized to represent the United States only in judicial proceedings which took place in the Supreme Court. Power to initiate federal criminal prosecutions, including the right to appear before a grand jury, was given to the local United States attorneys.[4] Moreover, United States attorneys functioned independently of the Attorney General. The Attorney General had no supervisory control over them, and instructions to United States attorneys could come only from the President. H. Cummings and C. McFarland, Federal Justice, 218 (1937).

However, in 1861 Congress changed this situation when it enacted the legislation which today, as modified, is 28 U.S.C. § 543. In this statute, the Attorney General was given supervisory power over United States attorneys, and authority to appoint attorneys to assist the United States Attorney.[5] Act of August 2, 1861, 12 Stat. 285, c. 37, Rev.Stat. § 363.

Moreover, in 1870, Congress authorized the Attorney General to "conduct and argue any case in which the government is interested, in any court of the United States." Act of June 22, 1870, 16 Stat. 162, c. 150, § 5, Rev.Stat. § 369. Thus, the Attorney General was no longer restricted to appearing for the United States only in

---

4. Since the Judiciary Act of 1789 specifically authorized the Attorney General to conduct proceedings only in the Supreme Court, it appeared that he was not permitted to appear for the United States in other federal courts. *In Re Subpoena of Persico,* 522 F.2d 41, 53 (2d Cir. 1975). In fact, however, early Attorneys General, at the President's request, had taken active roles in prosecuting cases in federal trial courts. H. Cummings and C. McFarland, Federal Justice 143 (1937).

5. 28 U.S.C. § 543 deals with the appointment of "attorneys to assist United States attorneys." However, the provisions of § 543 do not apply to attorneys who are appointed as assistant United States attorneys on a permanent basis. Such attorneys are appointed pursuant to 28 U.S.C. § 542, which refers specifically to "assistant United States attorneys."

There is thus a distinction between "assistant United States attorneys," appointed pursuant to § 542, and attorneys appointed "to assist United States attorneys," under § 543. This distinction is important to our purposes because, when the language of the 1861 statute is compared with the language of §§ 542 and 543, it is clear that the 1861 statute was the predecessor of § 543. The language of the 1861 statute is essentially the same as that of § 543; it deals with the appointment of "attorneys . . . to assist the district attorneys [United States attorneys in present day terminology]," while § 543 is concerned with "attorneys to assist United States attorneys."

judicial proceedings taking place in the Supreme Court. Additionally, the Attorney General was authorized to require the Solicitor General, or any officer of the Department of Justice, to conduct and argue cases in the federal courts. He was also given power to appoint attorneys to assist the Attorney General in the the trial of any case. Act of June 22, 1870, 16 Stat. 162, c. 150, § 17, Rev.Stat. §§ 364–366.

Thus, after 1870, the Attorney General was authorized to appoint attorneys to assist the United States Attorney, under Rev. Stat. § 363, and attorneys to assist the Attorney General, under Rev.Stat. § 366. These were separate and distinct statutory bases for the Attorney General, as head of the Department of Justice, to appoint attorneys to assist either himself or a United States attorney.

Then, in 1903, the court in *United States v. Rosenthal,* 121 F. 862 (S.D.N.Y.1903), decided that the Act of June 22, 1870 had not given to the Attorney General, or any officer of the Department of Justice, the power to appear before a grand jury. The basic issue confronted in *Rosenthal,* as framed by the court, was whether the Act of June 22, 1870, which authorized the Attorney General to "conduct and argue any case" in a federal court, could be construed to empower the Attorney General to conduct proceedings before a grand jury, "in derogation of the exclusive power" of the United States attorneys to conduct such proceedings. 121 F. at 866.

In *Rosenthal,* a Mr. Smith had been appointed as a special assistant to the Attorney General pursuant to Rev.Stat. § 366. Smith was assigned to investigate alleged fraud in the importation of silk into New York, and to conduct criminal and civil proceedings which might result from his investigations. He obtained indictments against a number of defendants, who moved to quash the indictments on the ground that Smith, as a special assistant to the Attorney General, had had no authority to appear before a grand jury.[6]

The court examined the traditional powers and duties of both the Attorney General and the United States attorneys. It determined that, until Congress passed the Act of June 22, 1870, the Attorney General had had no power to represent the United States in judicial proceedings other than those taking place in the Supreme Court. 121 F. at 866. Moreover, the court found that Congress, by the Act of June 22, 1870, did not intend to empower the Attorney General, or any officer of the Department of Justice, to conduct grand jury proceedings. The court stated:

> It is with difficulty believed that it was the intention of Congress to endow the highest law officer of the United States and the Solicitor General and the officers of the Department of Justice with power to "conduct and argue" a case before a grand jury. It is probable that the intention was to settle the right of these officers to "conduct and argue" cases "in any court," as they had been permitted to do in the Supreme Court and the Court of Claims, and to leave "public prosecutions, until they come before the court to which they are returnable, * * * within the exclusive direction of the District Attorney," as theretofore declared.

121 F. at 866.

*Rosenthal* thus read the 1870 statute to indicate an "attentive and jealous regard for the primary policy of limiting the conduct of matters before grand juries to the local officers." 121 F. at 867.

---

6. Smith had, prior to being appointed as a special assistant to the Attorney General, been retained by the Merchants' Association of the City of New York, which had an interest in the investigation and prosecution of those involved in the fraudulent importation. Moreover, when the Attorney General stated that he did not have funds to pay an attorney to conduct the investigation and proceedings, the Merchants' Association promised to pay the fees of any attorney the Attorney General would appoint for these purposes. Thus, although the court found that Smith's "relation to the matter [was] highly honorable and independent," 121 F. at 865, the court was confronted with a situation in which the potential for abuse of the right to appear before a grand jury was evident.

The court ruled that, since the Attorney General did not have the right to appear before a grand jury, then Smith, a specially appointed assistant to the Attorney General, did not have such power. The Attorney General could not delegate to his specially appointed assistant a power which he himself did not have. 121 F. at 869. Thus, *Rosenthal* held that the Attorney General, officers of the Department of Justice, and specially appointed assistants to the Attorney General, did not have power to appear before a grand jury.

The government argued in *Rosenthal* that, although Smith had been appointed as a special assistant to the Attorney General pursuant to § 366, he could also be considered as an attorney appointed to assist the United States Attorney pursuant to Rev.Stat. § 363.[7] On this basis, the government asserted, the indictments obtained by Smith were valid.

The court would not accept this argument, however. It found that "neither the instrument of appointment nor any extrinsic fact suggests that Mr. Smith was appointed to assist the [United States Attorney] or to have any official relation to him. . . . The appointee is in precise terms made an assistant to the Attorney General, and in no way related to the [United States Attorney] . . . ."[8] 121 F. at 869.

Thus, *Rosenthal* indicated that there is a significant distinction between an attorney appointed to assist the Attorney General, and an attorney appointed to assist the United States Attorney. The type of appointment a special attorney receives is determined by referring to the superior who supervises his work. Moreover, *Rosenthal* did not question the authority of an attorney appointed to assist the United States Attorney to appear before a grand jury. Such conduct was permitted by the statute

which was the predecessor of § 543, and, had Smith been appointed pursuant to that statute, working directly under the supervision of the United States Attorney, *Rosenthal* indicates that the indictments he obtained would have been valid.

### III

In response to the *Rosenthal* decision, 28 U.S.C. § 515 was enacted. Congress sought through this legislation to overrule the court's holding that the Attorney General, officers of the Department of Justice, and specially appointed assistants to the Attorney General, were not entitled to conduct, or aid in the conduct of, proceedings before a grand jury. Senate Judiciary Comm., Report on S. 2969, Sen.Rep. No. 3835, 59th Cong., 1st Sess. (1906). As stated in the Report of the House Judiciary Committee, § 515 was enacted:

> to give to the Attorney General, or to any officer in his Department or to any attorney specially employed by him, the same rights, powers, and authority which district attorneys now have or may hereafter have in presenting and conducting proceedings before a grand jury or committing magistrate.

House Judiciary Comm., Report on H.R. 17714, H.R.Rep. No. 2901, 59th Cong., 1st Sess. 1 (1906).

Section 515 was intended to give to the Attorney General and federal prosecutors who work under his supervision, independently of the United States Attorney, the right to appear before a grand jury. The Senate Report which accompanied the bill which later became § 515 states:

> It is frequently desirable and even necessary that the Attorney General should detail an officer of his Department to assist some United States attorney in the investigation and prosecution of cases of

---

7. Rev.Stat. § 363, as modified, is, today, 28 U.S.C. § 543.

8. It is noteworthy that, in the present case, the government argues that an appointment of an attorney to assist the United States Attorney is entirely different from an appointment of an

attorney to assist the Attorney General. This is the opposite of the proposition it urged upon the court in *Rosenthal*. Thus, since it rejected the argument offered by the government in that case, the decision of the *Rosenthal* court lends support to the position taken by the government in the present case.

unusual importance or interest, or to make an independent investigation and report the result to the Department, and, if necessary, to prosecute the same; or, where the latter is impracticable, to appoint a special assistant to the Attorney General, or special counsel *to act independently of the United States Attorney,* particularly in criminal matters.

Senate Judiciary Comm., Report on S. 2969, Sen.Rep. No. 3835, 59th Cong., 1st Sess. (1906). (emphasis added)

This paragraph makes clear that Congress intended, through § 515, to grant power to appear before a grand jury to certain individuals who would not be directly responsible to the local United States Attorney. There is no indication in the legislative history of § 515 that Congress was concerned with the power of those who are subject to the United States Attorney's supervision, i. e. attorneys appointed to assist the United States Attorney, to appear before a grand jury. That is because *Rosenthal,* to which § 515 was a direct response, had not raised any question in this regard.

Attention may now be turned to that aspect of § 515 which is the focus of the present inquiry: the requirement that officers of the Department of Justice, or attorneys specially appointed by the Attorney General, conduct legal proceedings, including grand jury proceedings, only when specifically directed to do so by the Attorney General. Consideration of the reasons for which this requirement was included in § 515 is useful in making the determination of whether there is a basis for extending it to apply to attorneys appointed to assist United States attorneys.

It has been suggested that a reason for the specific direction requirement of § 515 was Congress' contemporary concern with possible abuses in the employment of outside counsel by the Attorney General.[9] There were, indeed, problems concerning excessive fees paid to, and poor quality of services performed by, specially appointed outside counsel. Cong. Globe, 41st Cong., 2d Sess., pt. 4, 3036–38 (1870) (Remarks of Rep. Jenckes and Lawrence).

However, an examination of the Views of the Minority in the House Report on the bill which later became § 515 reveals a further, and, in this context, more significant reason for the specific direction requirement of the statute. It appears likely that this requirement was meant to respond in some measure to the reservations of a minority of the House Committee which had strongly objected to granting specially appointed counsel the right to appear before a grand jury. The minority report states:

> There is no objection to the employment by the Government of special counsel and the giving to such counsel all the rights and privileges named in the bill, save the right to appear before the grand jury, and in its room have the prerogatives and powers of the district attorney. The grand jury is a secret inquisition.

---

9. "Certainly the House Report should be read against Congress' contemporary concern with ensuring that the Attorney General's power to appoint special outside counsel did not become subject to financial abuse. *See* discussion in *United States v. Crosthwaite,* 168 U.S. 375, 381, 18 S.Ct. 107, 109, 42 L.Ed. 507 (1897) (construes Act of June 22, 1870, 16 Stat. 162, 164, c. 25 §§ 16–17, Rev.Stat. §§ 363–366, as intending to 'protect the treasury from the expense incident to the employment of special counsel'). *See also, Wall v. United States,* 384 F.2d 758, 763 (10th Cir. 1967); *United States v. Denton,* 307 F.2d 336, 338 (6th Cir. 1962), *cert. denied,* 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed.2d 232 (1963); Cong.Globe, 41st Cong., 2d Sess., pt. 4, 3035–3039 (1870). During the same year that § 515(a) was enacted, Congress passed an Act of Feb. 27, 1906, 34 Stat. 48, now codified as 31 U.S.C. § 665(b). This provision aimed 'to prevent the [Executive] Departments from incurring financial obligations over and above those authorized by Congress' through claims for extra or unauthorized services. Wickersham, Employment of Retired Army Officer, 30 Op. of Att'y Gen. 51, 53 (Feb. 7, 1913). *See also, United States v. Morse,* 292 F. 273 (S.D.N.Y.1922) (appointment of Special Counsel of Emergency Fleet Corporation as Special Assistant Attorney General, without additional compensation, does not violate § 665(b)). While these Congressional deliberations do not modify the House Report, they do provide illumination as to Congressional concerns and aims for section 515(a)." *In Re Subpoena of Persico,* 522 F.2d 41, 60 (2d Cir. 1975).

Everything taking place in its room is sacred, and in our judgment no person save the district attorney and his assistants in the court for which it is held should be permitted in its secret sessions to advise and control it. To grant the Attorney General the right to have special and learned counsel to assist in the prosecution and conviction is one thing, to have such counsel aid in receiving an indictment is a very different thing.

House Judiciary Committee, Report on H.R. 17714, H.R.Rep. No. 2901, 59th Cong., 1st Sess. 1 (1906).

Thus, certain members of the House Judiciary Committee expressed fears concerning § 515's extension of the power to appear before a grand jury. They were concerned that Congress, in permitting prosecutions to be initiated by people who would be independent of the United States Attorney, was creating a potential for abuse of this power. There was strong feeling that no person other than the United States Attorney for the local district, and his assistants, should be authorized to conduct grand jury proceedings, and that specially appointed assistants to the Attorney General should not be entrusted with this power.[10]

It may well be that the specific direction requirement of § 515 was included so as to allay to some extent fears that an unbounded prosecutorial force was being created, by permitting justice department officers, and specially appointed assistants to the Attorney General, to appear before a grand jury only when given specific directions to do so by the Attorney General.[11] In this manner, the Attorney General would supervise the work of these assistants, and bear ultimate responsibility for their conduct.

## IV

Therefore, an examination of both *Rosenthal,* which prompted Congress to enact § 515, and the legislative history of § 515, leads to the conclusion that there is no basis for extending the specific direction requirement of § 515 to attorneys appointed to assist United States attorneys. Congress did not intend that § 515 would affect the separate statutory basis, § 543, upon which attorneys are appointed to assist United States attorneys, and thus it did not contemplate that the phrase "any attorney appointed by the Attorney General under law" in § 515 would apply to attorneys appointed pursuant to § 543.

As previously discussed, the authority of the Attorney General to appoint attorneys to assist United States attorneys, and his authority to appoint attorneys to assist the Attorney General, have rested on separate statutory bases since 1870. *Rosenthal,* to which § 515 was a direct response, raised no question concerning the power of attorneys appointed to assist United States attorneys to appear before a grand jury. In fact, as previously discussed, *Rosenthal* indicated that, had Smith been appointed to assist the United States Attorney, the indictments he obtained would have been valid. *See* 121 F. at 869.[12]

Section 515 restates the power of the Attorney General to appoint his own special assistants, a power he had had since Rev. Stat. § 366 was enacted in 1870. Section

**10.** Although *Rosenthal* and the legislative history of § 515 indicate that the power to appear before a grand jury was exclusively in the hands of the United States Attorney and his assistants, tnere are indications that early Attorneys General participated in the drafting of indictments and may have appeared before grand juries. H. Cummings and C. McFarland, Federal Justice, 31, 38, 44, 48 (1937). *In Re Subpoena of Persico,* 522 F.2d 41, 53 (2d Cir. 1975) discusses the subject at greater length.

**11.** Although the House version of the bill which later became § 515 contained the requirement

that specially appointed assistants to the Attorney General be specifically directed to appear before a grand jury before they are entitled to do so, the Senate version of the bill contained no such requirement. The House version, however, was enacted by Congress. *See* 40 Cong. Rec. 9662 (1906) (Remarks of Senator Kean).

**12.** *Rosenthal* thus lends direct support to the proposition that an attorney appointed to assist the United States Attorney may appear before a grand jury without being specifically directed to do so by the Attorney General.

515 also enlarges the power of the Attorney General, officers of the Department of Justice, and attorneys specially appointed to assist the Attorney General, by permitting them to conduct grand jury proceedings. Congress saw fit, however, to limit this power by providing that those working under the Attorney General can only conduct grand jury proceedings when specifically directed by him to do so.

Furthermore, it appears that a reason for including the specific direction requirement in § 515 was to allay the fears of those who objected to ending the prerogative of United States attorneys and their assistants to conduct grand jury proceedings. The requirement was meant to apply only to attorneys who work independently of the United States Attorney, subject to the supervisory power of the Attorney General.

■ Therefore, the court holds that the phrase "any attorney specially appointed by the Attorney General under law" within § 515 does not apply to an attorney specially appointed to assist the United States Attorney. Section 543 is an independent basis for the appointment of attorneys to assist the United States Attorney. Since § 543 does not require that attorneys appointed pursuant to its provisions be specifically directed by the Attorney General to conduct grand jury proceedings, an attorney appointed to assist the United States Attorney may appear before the grand jury without having received such specific directions. If attorneys appointed pursuant to § 543 are authorized to appear before a grand jury by the United States Attorney they assist, then an indictment obtained as a result of grand jury proceedings which they conduct, or at which they assist, is valid.

■ The final step of our analysis is to examine the relationship between the specially appointed attorneys and the United States Attorney, vis-a-vis the Attorney General, in the present case. This examination reveals that these specially appointed attorneys are properly considered attorneys appointed to assist the United States Attorney, pursuant to § 543, rather than assistants to the Attorney General pursuant to § 515. This conclusion is based upon the following facts: The work of Duchnick and Huffman was directly supervised by the United States Attorney, who authorized their appearance before the grand jury. In argument before the court, the United States Attorney, Michael Walsh, stated that Duchnick and Huffman have at all times been directly responsible to his office, and that he has complete control of their activities as prosecutors for the United States. Moreover, there is no indication in the record that there was any contact between the Attorney General and the specially appointed attorneys in this case other than the letter which appointed them as special assistants to the United States Attorney.

Accordingly, the court finds that Duchnick and Huffman, who were appointed as "special assistants to the United States Attorney," were attorneys appointed "to assist the United States Attorney" within the meaning of § 543. Therefore, since § 543 is an independent statutory basis for the appointment of attorneys to assist the United States Attorney, and since § 543 does not require that attorneys appointed pursuant to its provisions be specifically directed to conduct grand jury proceedings by the Attorney General, the indictments obtained in the grand jury proceedings at which Duchnick and Huffman assisted are valid.

The decision of this court to grant the motions to dismiss the indictments is reversed, and IT IS ORDERED that those motions be denied.