UNITED STATES of America,

v.

James Mitchell NEWMAN, Defendant.

No. S81 Cr. 53–CSH.

United States District Court,
S. D. New York.

Feb. 25, 1982.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the U.S.; Lee S. Richards, Asst. U.S. Atty., New York City, of counsel.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, for defendant; Franklin B. Velie, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This memorandum deals with a number of motions argued by counsel on February 24, 1982.

The Government's application (I so construe the correspondence and oral argument) to dismiss the present superseding indictment without prejudice is granted. Defendant's motion that the dismissal be with prejudice is denied.

While not conceding that the indictment is subject to dismissal in law, the Government applies for dismissal without prejudice because of the possible presence of unauthorized personnel in the grand jury room. These were Jerome Merin and Rhonda Brown, both of whom appeared before the grand jury as Special Assistant United States Attorneys. A letter from the Deputy Attorney General appointing Merin to that status is attached to AUSA Richards' letter of February 19, 1982; defendant challenges its legal sufficiency. As to Brown, the Government is unable to locate a copy of her written authorization; she is said to recall "sitting in on (but not participating in) one brief session of the Grand Jury proceedings on this case." *Id.*

These circumstances cannot conceivably justify dismissal of the indictment with prejudice. In *United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978), the Second Circuit stated generally:

"The extreme sanction of dismissal of an indictment is justified in order to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, to 'help to translate the assurances of the United States Attorneys into consistent performances by their assistants.'" (footnotes omitted).

By agreeing to seek a new indictment from an entirely different grand jury, the Government eliminates any possible prejudice to the defendant resulting from the presence of unauthorized persons in the grand jury room. That is so, even though prejudice to the defendant from the presence of unauthorized persons in the grand jury room is presumed in law, *United States v. Heinze*, 177 F. 770, 772–73 (C.Ct., S.D.N. Y.1910); both actual and presumed prejudice are remedied by submissions to a new grand jury. Thus the first *Fields* objective will be accomplished without imposing upon the Government the "extreme sanction" of a dismissal with prejudice. As to the second *Fields* objective, no assurances of the United States Attorney requiring specific performance are suggested, apart from the obligation (subsumed in the first objective) to keep unauthorized persons out of the grand jury room.

No useful purpose would be served by an evidentiary hearing to plumb Merin and Brown to their respective depths. Counsel for defendant urged on argument that Merin or Brown may have repeatedly and wilfully attended the grand jury without authorization; that by their presence or participation they may have overborne the jury's judgment; that their association with the S.E.C. brought about a conflict of interest prejudicial, in some way, to defendant. This is all speculation, but of course I do not deny a hearing on that ground: evidence may fill the gaps left by speculation. Rather, I base my decision on the ground that assuming the worst with respect to the most awful of counsel's speculations, the harm is entirely remedied if the Government starts afresh before a different grand jury. If that grand jury refuses to return an indictment, the Government will have paid the price for unauthorized attendance; but I will not foreclose resubmission of the case against the defendant, and decline the request for a hearing.

Defendant cites no authority for dismissal of an indictment with prejudice, in the circumstances either presented by the record or assumed in counsel's arguments. At least since the turn of the century, it appears to have been the practice in this District to resubmit to grand juries indictments tainted by the presence of unauthorized persons. Thus in *United States v. Rosenthal*, 121 F. 862, 873–74 (C.Ct., S.D.N.Y. 1903), Judge Thomas said in quashing an indictment obtained by unauthorized persons:

> "Every citizen is amenable to the secret inquisition of the grand jury, and he may demand justly that his essential rights be guarded by the wholesome preservation of settled systems and policies, that give greater certainty to legal proceedings, and fix on the designated prosecuting officer of the locality inevitable accountability for what is done or omitted. *The inconvenience of resubmitting the matter to the grand jury is temporary;* the injustice of denying the defendants investigation pursuant to the law of the land would be perpetual. It is provident also that the present inattention to the statutory demarcation of duties *be corrected at this early stage of the prosecution*, lest, after possible years of litigation, when perchance the statute of limitations shall have run against the actions, it should be decided that there was error in the initiation of the proceedings. The indictments are not faulty, save for the single reason that they are based upon proceedings in great part conducted without authority by the special assistant to the Attorney General, and on that sole ground the mo-

tions to quash are granted." (emphasis added).[1]

As to the statute of limitations in the case at bar, I incline to the view that the plain wording of 18 U.S.C. § 3288 tolls the statute.[2] The circumstances of which defendant complains constitute an "error, defect or irregularity with respect to the grand jury"; that is precisely one of the situations which § 3288 addresses. *United States v. Grady*, 544 F.2d 598, 601 n.3 (2d Cir. 1976); *United States v. Macklin*, 535 F.2d 191 (2d Cir. 1976); *United States v. Hill*, 494 F.Supp. 571 (S.D.Fla.1980). Because the point was not fully briefed on the present motions, defendant may address a further motion on this point to the new indictment, if one is returned.

Defendant also seeks an evidentiary hearing to explore further the prior connection of John S. Martin, Jr., the present United States Attorney, with this case. It is said that impropriety or the appearance thereof may lead to an alternative basis for dismissal of the indictment with prejudice. The facts, to the extent presently revealed by correspondence attached to the motion papers, are these.

In mid-1978, Mr. Martin, then in private practice, was retained by one Norman Seiden in connection with an investigation by the office of the United States Attorney for this District into possible violations of the securities laws in respect of "inside information" trading. Seiden had been informed that his son-in-law, the present defendant Newman, was a target of that investigation. Seiden told Martin that he

---

1. The indicated resubmission to the grand jury in *Rosenthal*, notwithstanding the Court's finding that the original indictments were "based upon proceedings in great part conducted without authority," reinforces my conclusion in the case at bar that it is unnecessary to take evidence on the particulars of Merin's and Brown's participation.

2. Section 3288 provides:
   "Whenever an indictment is dismissed for any error, defect, or irregularity with respect to the grand jury, or an indictment or information filed after the defendant waives in open court prosecution by indictment is found otherwise defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations."

wished to assist in the defense of his son-in-law. Seiden's letter to Martin of January 8, 1982 reads in part:

> "Pursuant to your counsel and advice I gave information and documents to the Office of the United States Attorney."

Seiden's letter then recites his awareness that, in the latter part of 1981, Martin had been appointed United States Attorney for this District, and that Martin was (to quote again from Seiden's letter) "taking an active role in the prosecution of my son-in-law." Seiden's letter continues:

> "I believe you owe me an explanation as to how, after obtaining confidential and privileged information from me under the circumstances above described, you can now be prosecuting my son-in-law."

Martin's letter responding to Seiden, dated January 15, 1982, says in part:

> "My recollection is that after you and I met and discussed the matter a decision was made that you would provide to the Assistant United States Attorney then in charge of the case any information which he requested. I believe that as a result of this decision there was a meeting with Assistant United States Attorney Pedowitz in which you answered whatever questions he asked you. I have very little recollection of the details of that meeting and no recollection of being aware of any facts obtained during my interview with you that were not communicated to Mr. Pedowitz."

Through subsequently retained counsel, Seiden has sought to obtain the file of Martin's former firm relating to this matter. It is said that difficulties have been encountered locating that file. Presumably the Government has some notes or other documents relating to Seiden's meeting with an Assistant United States Attorney; resisting the present motion, the Government argues that it is under no present obligation to produce those documents, or to participate in an evidentiary hearing.

It is, of course, common ground that the present indictment of Newman arose out of the investigation to which his father-in-law refers in the correspondence quoted above.

But I agree with the Government that (assuming *arguendo* that Newman has standing to complain of any impropriety on Martin's part with respect to his prior representation of Seiden) no threshold showing has been made sufficient to require further inquiry. An arguable problem would arise only if Seiden revealed to Martin information or documents prejudicial to Newman which Seiden then omitted to mention to Assistant United States Attorney Pedowitz. Such a showing, if made, might require a further inquiry into whether Martin communicated such information, received in confidence, to his assistants after he became United States Attorney. But the clear import of the Seiden/Martin exchange of correspondence—both Seiden's letter of January 8, 1982 and Martin's reply of January 15—is that Martin, in his pre-Government role of privately retained counsel, advised Seiden to tell the United States Attorney's office everything, and Seiden, accepting that advice, thereupon did so. In these circumstances, Martin's participation in the case worked no possible prejudice upon Newman. *Cf. United States v. Fields, supra,* concurring opinion of Judge Mansfield, 592 F.2d at 651.

I will consider this matter further if Mr. Seiden submits an affidavit, stating (if that be the case) that he confided information or documents to Martin which thereafter were not volunteered by Seiden to the office of the United States Attorney, in accordance with Martin's advice. If such a claim is made by Seiden, the affidavit should also, of course, furnish as much detail as possible. I decline to direct the Government to produce its notes at the Seiden interview before Seiden and defendant, who bear the laboring oar on their allegations of impropriety, make a sufficient threshold showing.

Lastly, defendant contends that a hearing should be held to explore his claim that exculpatory material was withheld from the grand jury. I find no merit in that contention, for reasons to be explicated in a further, supplemental opinion. My present purpose is to advise counsel, as quickly as possible, of the Court's ruling on the issue of resubmission.

For the reasons stated, the present superseding indictment is dismissed without prejudice. In the event a new indictment is returned by the new grand jury, all of this Court's prior decisions remain in full force and effect, except, of course, my prior opinion and order dismissing the indictment for legal insufficiency, which the Court of Appeals reversed. 664 F.2d 12.

Lastly, I have endorsed and am filing concurrently the supplemental order drafted by the Government in respect of the depositions sought to be taken in Bermuda and the Bahamas. I agree with the Government that, in the circumstances of the case, such an order is appropriate.

I adhere to the trial date of March 22, 1982. Counsel are to proceed in conformity with the terms of this opinion.

It is So Ordered.